UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
HEMANT PATEL, M.D., P.C.,                                  :
                                        Plaintiff,         :
                                                           :          18 Civ. 10227 (LGS)
                    -against-                              :
                                                           :          **OPINION AND ORDER**
THEJASWI BANDIKATLA, M.D.,                                 :
                                        Defendant.         :
                                                           :
                                                           :
-----------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

        Plaintiff Hemant Patel, M.D., P.C. ("Patel") employed Defendant Thejaswi Bandikatla,

M.D., and terminated her employment before the parties' agreed-upon date.  The surviving

claims are Patel's claim for breach of contract and Bandikatla's five counterclaims for breach of

contract, tortious interference with contract, liability under the Trafficking Victims Protection

Act ("TVPA"), 18 U.S.C. § 1589, and liability under the New York State Human Rights Laws

("NYSHRL") and New York City Human Rights Laws ("NYCHRL").  Patel moves for

summary judgment on its claim and all counterclaims.  Bandikatla moves for partial summary

judgment on Patel's claim and the counterclaims for breach of contract (liability only) and

violation of the TVPA (liability only).  For the reasons discussed below, Patel's motion is

granted in part and denied in part, and Bandikatla's motion is denied.

## I.      BACKGROUND

        The background facts below are drawn from the parties' Rule 56.1 statements and other

submissions on these motions.  The facts are either undisputed or based on evidence in the record

drawing all reasonable inferences in favor of the non-moving party.

        Bandikatla is a medical doctor who attended medical school in India and completed her

medical residency in the United States.  Seeking to remain in the United States, Bandikatla successfully applied for an open position at Patel's clinics to begin the process of obtaining a J-1 visa waiver.  The parties signed an employment contract on October 15, 2015, which specified an employment term of three years.  The employment contract listed two work locations but also required Bandikatla to work at hospitals and medical facilities with which Patel was affiliated.

Bandikatla retained a law firm to assist in the preparation of all immigration-related documents, and Bandikatla paid the associated legal fees.  Bandikatla's J-1 waiver application identified a single "Proposed Practice Site" and was approved by the United States Citizen and Immigration Services ("USCIS") on October 11, 2016.

Bandikatla worked for Patel at several different offices.  On October 25, 2017, Bandikatla was advised that the office at West 125th Street, the same one listed in the J-1 waiver application, was closing.  Upon obtaining new legal counsel, she was advised that she was in violation of the terms of her visa due to work for non-approved entities and non-approved locations.  Bandikatla approached Patel about filing an amended H-1B application.  Ultimately, Bandikatla filed the amended application and paid the associated fees.

In August 2018, Bandikatla sought from USCIS a transfer of her H-1B Visa to Central Florida Medical Associates ("CFMA").  On September 17, 2018, the same week USCIS approved her transfer, Bandikatla tendered her resignation to Patel and advised that her last day of work would be October 5, 2018.  On October 9, 2018, Patel commenced a lawsuit against Bandikatla.  On February 15, 2019, Patel filed an Amended Complaint naming Bandikatla's subsequent employer, CFMA and Dr. Syed-Bilal Ahmed, M.D., as additional defendants.  The Amended Complaint seeks specific performance of the contract by Bandikatla and $10 million in damages.  It also sought $6.5 million in damages from CFMA and Dr. Ahmed for tortious

interference of contract, but on May 16, 2019, these claims were dismissed for lack of personal

jurisdiction.  On June 15, 2020, the U.S. Department of Labor (the "DOL") found that Patel had

committed violations for "failure to pay wages as required and required payment of the

additional petition fee."  Wages withheld in the amount of $7,729.24 were assessed.  This

included Bandikatla's wages for her training from November 7, 2016, to November 20, 2016, in

the amount of $2309.00 and for her last weeks of employment with Patel from September 24,

2018, to October 5, 2018, in the amount of $3691.64.

## II.   SUMMARY JUDGMENT

### a.  Legal Standard

When parties cross-move for summary judgment, the Court analyzes the motions

separately, "in each case construing the evidence in the light most favorable to the non-moving

party."  *Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020).  Summary judgment is

appropriate where the record establishes that "there is no genuine dispute as to any material fact

and that movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of

fact is genuine if the evidence is such that a reasonable jury could return a verdict for a

nonmoving party."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR*

*Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  New York law applies to

the state law claims because the parties' submissions assume that it does.  *See In re Snyder*, 939

F.3d 92, 100 n. 2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable

choice of law[.]" (quoting *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017)).

### III.    DISCUSSION

#### A.  Subject Matter Jurisdiction over Counterclaims

Patel argues that the Court lacks subject matter jurisdiction over Bandikatla's counterclaims because claims related to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., require that administrative remedies be exhausted, which Bandikatla purportedly has failed to do.  *See, e.g.*, *Palmer v. Trump Model Mgmt.*, 175 F. Supp. 3d 103, 108 (S.D.N.Y. 2016).  However, Bandikatla's counterclaims are not INA claims but rather use Patel's purported violations of the INA as evidence to support the counterclaims.  *See, e.g., Adia v. Grandeur Mgmt., Inc.*, 933 F.3d 89 (2d Cir. 2019) (reversing dismissal of a TVPA claim where plaintiff alleged that the defendant-employer failed to pay him the prevailing wage under the INA and failed to submit an H-2B petition to immigration authorities).  The Court has subject matter jurisdiction over Bandikatla's counterclaims.

#### B.  Breach of Contract

The parties cross-move for summary judgment on their respective breach of contract claims.  The parties entered into the employment contract on October 15, 2015.  Patel's theory of breach is that Bandikatla terminated her employment early, in violation of the contract. Bandikatla's theory of breach is that Patel failed to pay Bandikatla's wages and immigration fees, which were Patel's responsibility.  These respective motions are both denied because, reading the record in the light most favorable to the non-moving party, there are genuine disputes of material fact as to each party's adequate performance.  Breach of contract under New York Law requires proof that the party asserting the claim adequately performed under the contract. *Donohue v. Cuomo*, 980 F.3d 53, 67 (2d Cir. 2020) (reciting the elements for a breach of contract claim under New York law, including "adequate performance by the [moving party]").  Neither

4

party is entitled to summary judgment because the record does not establish, as a matter of law, that either party adequately performed its or her obligations under the contract.

### 1.   Whether Bandikatla Fully Performed is a Disputed Issue of Fact

Bandikatla is not entitled to summary judgment on the contract claim and counterclaim because, viewing the evidence in Patel's favor, a reasonable jury could find that Bandikatla did not fulfill her contractual obligation to work for a three-year term.  Bandikatla argues that she was excused from this obligation under § 2 of the contract, which states that Bandikatla "agrees to the contractual obligations set forth in § 214(l) of the Immigration and Nationality Act."  8 U.S.C. § 1184(l).  That provision of the immigration law requires an alien to work for a health care organization for not less than three years unless the Attorney General determines that extenuating circumstances exist.  8 U.S.C. § 1184(l)(1)(C)(ii).  Bandikatla sought from USCIS a transfer of her H-1B Visa based on extenuating circumstances and was approved for that transfer on September 17, 2018.  Although this is a colorable argument, it does not entitle Bandikatla to summary judgment on her breach of contract claim because the contract is ambiguous, which raises a question of fact for the jury.  *See Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014) ("Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent or when specific language is susceptible of two reasonable interpretations.");  *Rhoda v. Rhoda*, 110 N.Y.S.3d 35, 37 (2d Dep't 2019) ("The resolution of an ambiguous provision, for which extrinsic evidence may be used, is for the trier of fact.").  Reasonable minds might differ on whether the three-year term was without exception or whether the incorporation of 8 U.S.C. § 1184(l) also incorporated the statutory exception, particularly since the immigration statute requires the same three-year term of employment as the contract.

Bandikatla further argues that the DOL issued a determination that Patel failed to pay

wages, thus definitively establishing Patel's breach.  This argument is incorrect for two reasons. First, even if Patel's failure to perform were established beyond dispute, Bandikatla would still need to prove that she fulfilled her contractual obligations in order to recover for breach of contract.  Second, Patel's failure to perform is not established beyond dispute.  In substance, Bandikatla is arguing that the principle of collateral estoppel applies.  Collateral estoppel prevents a party from relitigating an issue that was decided against the party in a prior action. *See Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 112 (2021).  A party may be precluded from raising an issue raised in a final administrative decision if the agency rendered the decision pursuant to its "adjudicatory authority" and "employed procedures substantially similar to those used in a court of law."  *ABN AMRO Bank, N.V. v. MBIA Inc.*, 17 N.Y.3d 208, 226 (2011). Collateral estoppel is inapplicable here because the record suggests that the DOL determination was based on an investigation rather than a full hearing.  Patel would be precluded from litigating the issue only if Patel had had the opportunity to litigate DOL's findings and determination, which does not appear to be the case.  Bandikatla's motion for summary judgment on the breach of contract claim and counterclaim is denied.

### 2.   Whether Patel Fully Performed is a Disputed Issue of Fact

Similarly, Patel is not entitled to summary judgment on the contract claim and counterclaim because, construed in the light most favorable to Bandikatla, a reasonable jury could conclude that Patel failed to perform its contractual obligations by failing to pay Patel wages that were due.  Patel asserts that it did pay her wages but that Bandikatla failed to deposit a check that was mailed to her.  There is a genuine dispute as to Patel's performance under the contract.

### C. Tortious Interference with Contract

Patel is granted summary judgment on Bandikatla's counterclaim for tortious interference with contract, as the application is unopposed.

### D. Trafficking Victims Protection Act

The parties cross-move for summary judgment on Bandikatla's TVPA counterclaim. Patel's motion is granted in part.  Bandikatla's motion is denied.

A person violates the TVPA and is liable for damages and reasonable attorneys' fees when he "knowingly provides or obtains the labor or services of a person . . . (2) by means of serious harm or threats of serious harm to that person or another person; [or] (3) by means of the abuse or threatened abuse of law or legal process."  18 U.S.C. § 1589(a)(2)-(3) (violative conduct); 18 U.S.C. § 1595(a) (civil remedy); *see Adia*, 933 F.3d at 92-93.  "[A]buse or threatened abuse of legal process" is defined as:

> [T]he use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

18 U.S.C. § 1589(c)(1).  "[S]erious harm" is defined as:

> [A]ny harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2).  An individual may also be held liable for an attempt to violate § 1589.  18 U.S.C. § 1594(a).  Liability for an "attempt" crime requires "intent to commit the crime and . . . conduct amounting to a substantial step towards the commission of a crime."  *United States v. Pugh*, 945 F.3d 9, 20 (2d Cir. 2019).

Bandikatla alleges that Patel violated § 1589(a)(2) and (a)(3) on four occasions: (1) when

Patel filed fraudulent J-1 waiver documents; (2) when Patel forced Bandikatla to pay the filing

fees for her visa amendment filing; (3) when Patel filed this lawsuit, seeking from Bandikatla

either specific performance or damages of $10 million; and (4) when Patel sued CFMA for

tortious interference with contract, seeking a permanent injunction and damages of $6.5 million.

Patel's summary judgment motion is granted as to the first and the second instances and denied

as to the third and the fourth.  Bandikatla's summary judgment motion on the TVPA

counterclaim is denied.

### 1.  Patel's Fraudulent Filing of J-1 Waiver Documents

Bandikatla argues that Patel's filing of fraudulent J-1 waivers to New York State violated

§ 1589(a)(2) and (3).  This claim fails because no record evidence suggests that the allegedly

fraudulent filing was a coercive attempt to "obtain[] the labor or services of a person… (2) by

means of serious harm or threat of serious harm to that person or another person; [or] (3) by

means of the abuse or threatened abuse of law or legal process."  *See* 18 U.S.C. § 1589(c)(1);

*Anora v. Oasis Prof'l Mgmt. Group*, 2021 U.S. Dist. LEXIS 54147, at *16-17 (S.D.N.Y. March

19, 2021) (dismissing TVPA claim because plaintiff did not plead facts to show that fraudulent

document filing was "to exert pressure on [plaintiff] to continue working").  Section 1589(a)

prohibits the use of one of the proscribed "means" for the *purpose* of "obtain[ing]" labor.

Whether or not the filing was in violation of immigration law, no record evidence supports a

finding that the fraudulent filing was a coercive "means" to employed to "obtain" Bandikatla's

labor.  Based on the evidence, a reasonable jury could find only that the purpose of the

fraudulent filing was to obtain work authorization from the U.S. government, not to exert

pressure on Bandikatla by means proscribed in § 1589(a).  Patel's summary judgment motion is

granted on the portion of the TVPA counterclaim based on Patel's fraudulent J-1 waiver filing.

### 2. Bandikatla's Payment of Visa Amendment Filing Fees

Second, Bandikatla claims that Patel violated § 1589(a)(2) and (3) by pressuring Bandikatla to pay for immigration filing fees in violation of 8 U.S.C. § 1182. The TVPA counterclaim based on this theory fails for the same reason. Banditkatla asserts that Patel took a "coercive tone," but no record evidence supports a finding that this pressure was a "means" to "obtain" Bandikatla's labor. Patel's summary judgment motion is granted on the portion of the TVPA counterclaim based on Bandikatla's payment of visa amendment filing fees.

### 3. Patel's Claim Against Bandikatla Seeking $10 Million or Specific Performance

Bandikatla claims that Patel's legal action seeking damages of $10 million or specific performance requiring her return to Patel's employment violated § 1589(a)(2) and (3). Patel's lawsuit was arguably based on a legitimate employment contract issue with genuine ambiguity (*see* discussion *supra*) and, in the light most favorable to Patel, was not in bad faith. On those facts, a reasonable jury could find that the initiation of a lawsuit asserting a breach of contract, even with an exaggerated damages or specific performance demand, was not an "abuse of law or legal process" or "serious harm." *Cf. Adia v. Grandeur Mgmt.*, 933 F.3d 89, 91 (2d Cir. 2019) (holding that threat of deportation constitutes both "abuse of law or legal process" and "serious harm"). Banditkatla's motion for summary judgment is denied on the portion of the TVPA counterclaim based on the commencement of this lawsuit.

On the other hand, a reasonable jury could find that a $10 million damages demand was a threat of serious financial harm sufficient to result in a TVPA violation -- i.e., was "sufficiently serious… to compel a reasonable person of the same background and in the same circumstances [as Bandikatla to return to her former employer, Patel] to avoid incurring that harm." § 1589(c)(2)*; see Paguirigan v. Prompt Nursing Emp. Agency LLC*, No. 17 Civ. 1302, 2019 WL

4647648, at *17-18 (E.D.N.Y. Sept. 24, 2019), *aff'd in part, appeal dismissed in part*, 827 Fed. App'x 116 (2d Cir. 2020) (granting judgment on TVPA claim based on the threat of "serious harm" resulting in part from an excessive and unenforceable liquidated damages clause in class members' employment contracts).  For this reason, Patel's motion for summary judgment is denied on the TVPA counterclaim based on the damages demand in this suit against Bandikatla.[1]

### 4.  Patel's Claim Against CFMA Seeking $6.5 million

For the same reasons, both parties are denied summary judgment on the TVPA counterclaim based on Patel's claim against Bandikatla's subsequent employer for $6.5 million. Viewing the evidence in the light most favorable to Patel, a reasonable jury could find that the claim was a proper response to at least arguable tortious interference with Patel's employment contract with Bandikatla.  Alternatively, viewing the evidence in the light most favorable to Bandikatla, a reasonable jury could find that the excessive damages claim against Bandikatla's subsequent employer was a bad-faith attempt to "obtain" Bandikatla's labor by "means" of a "threat[] of serious harm."  According to Bandikatla, she eventually was terminated from CFMA because of Patel's lawsuit.

For the foregoing reasons, Patel's motion for summary judgment on the TVPA counterclaim is granted in part and denied in part.  Bandikatla's motion for summary judgment on the TVPA counterclaim is denied.

### E.  NYSHRL and NYCHRL

 Patel's motion for summary judgment on the NYSHRL and NYCHRL counterclaims is granted.

The NYSHRL makes it unlawful "[f]or an employer . . . because of an

---

[1] As the § 1589(a)(2) issue (threat of serious harm) survives summary judgment, the 1589(a)(3) issue (abuse of legal process) need not be reached.

individual's . . . race, creed, color, national origin . . . to discriminate against such individual in compensation or in terms, conditions, or privileged of employment."  N.Y. Exec. Law § 296(1)(a).  The NYSHRL discrimination claim in this case is treated as analytically identical to federal discrimination claims under Title VII.  *See Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019).[2]  To survive a summary judgment motion for disparate treatment under Title VII, courts apply the *McDonnell Douglas* burden-shifting analysis.  411 U.S. 792 (1973); *see Lenzi*, 944 F.3d at 108.  First, a plaintiff must establish a prima facie case of discrimination by showing that (1) she belongs to a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019).  Adverse employment actions include termination, demotion, a decrease in wage or salary, a material loss of benefits, and other indices unique to a particular situation.  *See Fox v. Costco Wholesale Corporation*, 918 F.3d 65, 71-72 (2d Cir. 2019); *Gilani v. Teneo, Inc.*, No. 20 Civ. 1785, 2021 WL 3501330, at *19 (S.D.N.Y. August 4, 2021).  An inference of discriminatory intent may be shown with evidence that the employer treated Bandikatla less favorably than similarly situated employees outside her protected group.  *See Lenzi*, 944 F.3d at 108 (holding that plaintiff made prima facie showing of discriminatory intent by showing that she was paid below market while her male counterparts were paid above market); *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 122 (S.D.N.Y. 2020).  Second, if Bandikatla succeeds in establishing a prima facie case, then the burden shifts to Patel to

---

[2] The more stringent standard adopted in the October 11, 2019, amendment to the NYSHRL -- specifically, to New York Executive Law § 296(1)(h) -- is inapplicable here, as the amendment applies only where "the relevant conduct … all occurred before the effective date of the amended law."  *See Maiurano v. Cantor Fitzgerald Secs.*, No. 19 Civ. 10042, 2021 WL 76410, at *3, n.2 (S.D.N.Y. Jan. 8, 2021).  In this case, the relevant conduct began in 2015.

produce a legitimate nondiscriminatory reason for the adverse action. *McDonnell*, 411 U.S. at 803; *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016). Third, if Patel provides a nondiscriminatory explanation for the adverse action, then the burden shifts back to Bandikatla to "establish, by a preponderance of evidence, that [Patel's] justification is a pretext for discrimination." *Lenzi*, 944 F.3d at 108 (quoting *Legg v. Ulster County*, 820 F.3d 67, 73-74 (2d Cir. 2016)). Patel's motion for summary judgment is granted unless Bandikatla proffers sufficient evidence to permit a rational fact finder to infer that race was a "motivating factor" for Patel's employment decision, i.e., that Bandikatla was discriminated against, at least in part because of her protected status. *See Lenzi*, 944 F.3d at 108.

Summary judgment is granted to Patel on the NYSHRL discrimination claim because Bandikatla has not established a prima facie case of discrimination. Bandikatla alleges that she suffered three adverse employment actions: (1) her contract required her to work in two locations, (2) her pay check was withheld and (3) she was forced to pay for her own immigration filing fees and related attorneys' fees.

First, the contractual requirement that Bandikatla work in two locations is not an adverse employment action. *Fox*, 918 F.3d at 71 ("An adverse employment action must be more disruptive than a mere inconvenience or an alteration of job responsibilities[.]" (internal quotation marks omitted) (quoting *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2000)); *accord Gilani*, No. 20 Civ. 1785, 2021 WL 3501330, at *19 (S.D.N.Y. August 4, 2021). Nor is there evidence that this contractual provision was motivated by discriminatory intent. Whether the contractual requirement violated any immigration law is immaterial for the discrimination claim.

12

For the second theory of liability, nothing in the record supports an inference that the withholding of wages for work between November 7, 2016, and November 20, 2016, and between September 24, 2018, and October 5, 2018, was because of Bandikatla's national origin. Whether the withholding of wages was a violation of any employment law is immaterial for the discrimination claim.

For the third theory of liability, even assuming that Bandikatla's being forced to pay for her immigration-related expenses was an "adverse employment action," the record does not support an inference of discriminatory intent. Bandikatla argues that this conduct must be discriminatory because only she, as a foreign national, was required to pay these fees and expenses while her American counterparts were not. This is argument is unpersuasive. Only if she and her comparators were similarly situated, and Patel nevertheless treated them differently, would there be an inference of discrimination. Here, there was disparate treatment because Bandikatla and her counterparts were not similarly situated. As American citizens, her counterparts did not incur any immigration expenses. Patel's motion for summary judgment on the NYSHRL counterclaim is granted.

For the same reasons, the NYCHRL counterclaim also fails. The NYCHRL is less demanding of a claimant than the pre-amendment NYSHRL, and Bandikatla may prove an adverse employment action simply by showing that she was treated "less well." *See Emamiam v. Rockefeller Univ.*, 971 F.3d 380, 389-390 (2d Cir. 2020) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)); *Hamburg v. N.Y.U. Sch. of Med.*, 155 A.D.3d 66, 73 (1st Dep't 2017); *Sanderson-Burgess v. City of N.Y.*, 173 A.D.3d 1233, 1235 (2nd Dep't 2019). Nevertheless, the NYCHRL requires Bandikatla to show that "the conduct is caused by a discriminatory motive" and that she was "treated less well at least in part because of

13

her [national origin]." *Emamiam*, 971 F.3d at 389 (quoting *Mihalik*, 715 F.3d at 110); *accord*

*Brown v. Montefiore Medical Center*, No. 19 Civ. 11474, 2021 WL 1163797, at *8 (S.D.N.Y.

Mar. 25, 2021). Here, viewing the evidence in the light most favorable to Bandikatla, no

reasonable jury could find that Patel treated Bandikatla less well because of discriminatory

animus based on Bandikatla's national origin or citizenship. *See Ya-Chen Chen v. City Univ. of

N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (dismissing a NYCHRL case for failing to show that

plaintiff was fired because of her protected characteristics). Patel's motion for summary

judgment on the NYSHRL and NYCHRL claims are granted.

## IV.    CONCLUSION

For the foregoing reasons, Patel's motion is granted in part -- summary judgment is

granted in favor of Patel on the counterclaims for tortious interference with contract, liability

under TVPA for fraudulent J-1 waiver filing and Bandikatla's payment of filing fees, and

liability under the NYSHRL and NYCHRL -- and is otherwise denied. Bandikatla's motion for

summary judgment on the claim and counterclaim asserting breach of contract is denied. For

clarity, the only surviving claims are the parties' respective breach of contract claim and

counterclaim, and Bandikatla's counterclaim under the TVPA based on Patel's lawsuits and

damage demands against Bandikatla and CFMA.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 118 and 121.

A trial scheduling order will follow.

Dated:  September 17, 2021
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

14