# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HEMANT PATEL M.D., P.C<br><br>     Plaintiff,<br><br>-against-<br><br><br>THEJASWI BANDIKATLA, M.D. and<br>JOHN DOE 1 INC., and JOHN DOE 2,<br>Individually.<br><br><br><br>     Defendants. | Hon. Jed S. Rakoff, U.S.D.J.<br><br>Civil Action No. 18-10227 (JSR) |

---

## DEFENDANT-COUNTERCLAIMANT DR. THEJASWI BANDIKATLA'S RESPONSE TO HPMDPC's SUPPLEMENTAL MOTION *IN LIMINE*

---

ROSHAN D. SHAH, ESQ.
**ANDERSON & SHAH, LLC**
**ATTORNEYS AT LAW**
305 Broadway, 7th Floor
New York, New York 10007
Tel:  732-398-6545
Fax: 732-576-0027
*Attorneys for Defendant-*
*Counterclaimant Dr. Thejaswi*
*Bandikatla*

Of Counsel and on the Brief:
Roshan D. Shah, Esq.

On the Brief:
Erin Donegan, Esq.

**TABLE OF CONTENTS**

ARGUMENT ....................................................................................................... 1

POINT I

DR. BANDIKATLA HAS NO DESIRE TO RE-LITIGATE DISMISSED CLAIMS ............. 1

POINT II

THE IMMIGRATION STATUS OF OTHER H-1B EMPLOYEES AND HPMDPC'S
FAILURE TO PROVIDE ITS TAX RETURNS MAY BE RELEVANT AND
ADMISSIBLE ...................................................................................................... 2

    A. The Immigration Status of Other H-1B Employees May Be Relevant And
       Admissible ................................................................................................. 2

    B. HPMDPC's Failure to Provide Its Tax Returns May Be Relevant If The Court
       Denies Dr. Bandikatla's Motion *In Limine* ................................................. 3

POINT III

THE COURT HAS NEVER DECIDED WHAT DAMAGES ARE AVAILABLE TO
HPMDPC .......................................................................................................... 5

POINT IV

HPMDPC HAS NOT PAID DR. BANDIKATLA DAMAGES ON HER CONTRACT CLAIM
AND ITS CLAIM TO THE CONTRARY IS ACTUALL A CONCESSION THAT IT FAILED
TO PERFORM UNDER THE CONTRACT ...................................................... 7

POINT V

HPMDPC'S EXHAUSTION OF ADMINISTRATIVE REMEDIES ARGUMENTS HAVE
ALREADY BEEN REJECTED AND ITS CONTINUED INSISTENCE IS SIMPLY A
FAILURE TO RESPECT THE COURT'S PRIOR DECISION ........................................... 10

POINT VI

DR. BANDIDATLA IS ENTITLED TO ADVANCE HER CLAIM THAT SHE
ADEQUATELY PERFORMED HER CONTRACTUAL OBLIGATIONS ......................... 12

POINT VII

THE TVPA PROVIDES FOR PUNITIVE DAMAGES ...................................................... 16

CONCLUSION ................................................................................................... 17

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

*Ditullio v. Boehm,*
  662 F.3d 1091 (9th Cir.  ................................................................. 16

*Macolor v. Libiran,*
  2016 U.S. Dist. LEXIS 40566 (S.D.N.Y. Mar. 25, 2016) ............................................. 16

*Methyl Tertiary Butyl Ether Prods. Liab. Litig.,*
  643 F. Supp. 2d 482 (S.D.N.Y. 2009).............................................................. 1

*Morales v. Kavulich & Assocs., P.C.,*
  294 F.Supp. 3d 193 (S.D.N.Y. 2018).............................................................16

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.,*
  937 F. Supp. 276 (S.D.N.Y. 1996) ............................................................... 2

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,*
  937 F. Supp. at 287 ............................................................................. 3

*Paguirigan v. Prompt Nursing Emp't Agency LLC,*
  2019 U.S. Dist. LEXIS 165587,(E.D.N.Y. Sept. 23, 2019) ...........................................6

*United States Underwriters Ins. Co. v. Falcon Constr. Corp.,*
  2006 U.S. Dist. LEXIS 79329 (S.D.N.Y. Oct. 30, 2006) .............................................4

*United States v. Ozsusamlar,*
  428 F. Supp. 2d 161 (S.D.N.Y. 2006)............................................................. 1

*Valentine Dolls, Inc. v. McMillan,*
  202 N.Y.S.2d 620 (Sup. Ct. 1960) ......................................................5, 6, 17

*Viada v. Osaka Health Spa, Inc.,*
  2005 U.S. Dist. LEXIS 32854 (S.D.N.Y. Dec. 12, 2005) ............................................ 2

## UNITED STATES CODE

11 U.S.C. § 1184 ............................................................................................... 13, 14, 15

18 U.S.C. § 1589 ...................................................................................................... 1

8 USCS § 1182(n)(2)(C)(vi)(I) .................................................................................. 5

## CODE OF FEDERAL REGULATIONS

20 C.F.R. § 655.731 ................................................................................................ 5, 9

8 C.F.R. § 2.1 ......................................................................................................... 13

C.F.R. § 41.63(c)(4)(i) and (iii) ............................................................................. 12

## FEDERAL RULES OF EVIDENCE

FED. R. EVID. 401 ................................................................................................. 1, 15

FED. R. EVID. 402 ................................................................................................. 1, 15

<u>POINT I</u>[1]

DR. BANDIKATLA HAS NO DESIRE TO
<u>RE-LITIGATE DISMISSED CLAIMS.</u>

In its first point, plaintiff Hemant Patel, M.D., P.C. (HPMDPC) seeks to "exclude evidence regarding defendant['s] dismissed claims . . . including precluding defendant from offering any evidence at trial which she used in litigating issues raised in determination of her motion for summary judgment." *Pl.'s Mvg. Br.*, *4 (ECF No. 185).

At the outset, we note: Dr. Bandikatla has no intention of seeking to admit irrelevant evidence at trial. If this were attempted, it would be appropriate to make an objection under Fed. R. Evid. 401. Nor does Dr. Bandikatla intend to "relitigate" claims dismissed by this Court on summary judgment (at least not at trial).

What we anticipate is happening here is that HPMDPC is attempting to preclude evidence relevant to *viable* claims simply because it also supports a dismissed claim. For example, documents and testimony related to Dr. Bandikatla's payment of legal fees and reimbursements to HPMDPC for immigration expenses relates to her own breach of contract counterclaim, as well as her defense to HPMDPC's breach of contract claim. The sheer fact that such evidence could also support a dismissed claim, such as one of the theories that the Court dismissed under the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1589, should not result in barring it. *See e.g. In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 643 F. Supp. 2d 482, 492 (S.D.N.Y. 2009)(quoting *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006)("A district court will 'exclude

---

[1] The arguments in Points I and II of HPMDPC's motion are identical to those in its initial motion. For the Court's convenience, Dr. Bandikatla has reproduced, with minor variation, her arguments in opposition.

evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds'").

HPMDPC's attempt to bar evidence as to "dismissed claims" in Point I of its motion is simply too vague and fails to appropriately identify what evidence it seeks to preclude. *See Viada v. Osaka Health Spa, Inc.*, 2005 U.S. Dist. LEXIS 32854, at *1 (S.D.N.Y. Dec. 12, 2005)(noting motions *in limine* were "vague" as "they do not specify the writings or potential testimony" to be excluded and that "[a]s a result, the Court is unable to determine, with any degree of certainty, whether the writings and testimony sought to be excluded from the trial would be inadmissible"); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996)(noting a motion *in limine* "lack[ed] the necessary specificity with respect to the evidence to be excluded" and reserving a ruling until trial with factual context). It should be denied accordingly.

POINT II

THE IMMIGRATION STATUS OF OTHER H-1B EMPLOYEES AND HPMDPC'S FAILURE TO PROVIDE ITS TAX RETURNS MAY BE RELEVANT AND ADMISSIBLE.

HPMDPC also seeks to exclude evidence regarding the immigration status of other H-1B employees and its failure to produce its tax returns. But this evidence may be relevant and admissible depending on what occurs at trial.

A.     The Immigration Status Of Other H-1B Employees May Be Relevant And Admissible.

HPMDPC seeks to exclude evidence "relating to non parties' H1-B immigration status." *Pl.'s Mvg. Br.*, **4-5 (ECF No. 185). It's unclear exactly what HPMDPC is seeking to preclude. The brief references a prior order where the Court "did not direct Plaintiff to

provide the Defendant with the names or personal information related to [its] employees who held H1-B visas during the time Defendant was employed by Plaintiff." *Id.* at *5. Is plaintiff seeking to preclude us from introducing the names of individuals who they never identified? The motion is puzzling and, once again, too vague and should be denied for that reason alone. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 937 F. Supp. at 287.

Moreover, evidence of an employee's immigration status *could be* relevant in certain contexts. For example, if an HPMDPC employee who holds an H-1B Visa testifies favorably for HPMDPC, then the defense should have a right to cross-examine them on their potential bias—which may include their fear of retaliation or termination based on their immigration status.

Again, it's unclear if this is the type of evidence that HPMDPC seeks to exclude. If so, then their motion should be denied, as such evidence of bias is clearly admissible because it bears on credibility.

B.    HPMDPC's Failure To Provide Its Tax Returns May Be Relevant If The Court Denies Dr. Bandikatla's Motion *In Limine*.

HPMDPC also seeks to preclude Dr. Bandikatla from offering any evidence relating to its failure to provide tax returns during discovery. *Pl.'s Mvg. Br.*, *5  (ECF No. 185). At the outset, we note: Dr. Bandikatla's own motion *in limine* should render this portion of HPMDPC's motion moot. That is because, if the Court grants Dr. Bandikatla's motion, then HPMDPC won't be permitted to introduce evidence of damages beyond a claim for nominal damages ($1.00).

But if the Court denies Dr. Bandikatla's motion, then HPMDPC's failure to produce its financial documents, including tax returns, is relevant because it strikes at the sufficiency of its evidence. For example, if HPMDPC is permitted to stand before the jury

and argue that its revenue table (*see* ECF No. 124-11, at \*\*6-7) constitutes evidence of lost profits, then Dr. Bandikatla should be able to elicit the fact that HPMDPC failed to produce any of the documents underlying this table, including tax returns and other financial information. The sheer fact that HPMDPC failed to produce this evidence during discovery does not preclude Dr. Bandikatla from attacking HPMDPC for it. Thus, HPMDPC's motion on this point should be denied if it isn't rendered moot by Dr. Bandikatla's own motion.

The cases HPMDPC cites don't help it. While courts have repeatedly denied *in limine* motions as improper where attempts were made to reargue a matter previously decided on summary judgment, *see, e.g.*, *United States Underwriters Ins. Co. v. Falcon Constr. Corp.*, 2006 U.S. Dist. LEXIS 79329, at \*7 (S.D.N.Y. Oct. 30, 2006)(*in limine* motion denied as "improper" attempt to rehash a late notice issue decided on summary judgment), there is no legal support for the assertion that a party is precluded from bringing any and all theoretical evidence to trial on the basis that it was referenced in arguing for summary judgment on claims that were found to be jury questions. Here, it would be inappropriate to exclude otherwise admissible evidence.

<u>POINT III</u>

THE COURT HAS NEVER DECIDED WHAT
<u>DAMAGES ARE AVAILABLE TO HPMDPC.</u>

In Point III, HPMDPC argues that the parties have already litigated, and the Court has already decided, the issue of what damages are recoverable on its breach of contract claim. *Pl.'s Mvg. Br.*, \*6 (ECF No. 185). At the outset, we note that this "new" motion is nothing more than a rehashing of HPMDPC's opposition to Dr. Bandikatla's motion *in limine* in which she sought to limit plaintiff's recovery to nominal damages. *See Pl.'s Opp. Br. to Dr. Bandikatla's Mot. in Limine*, \*\*2-3 (ECF No. 157). But more importantly, HPMDPC's arguments are without merit because this Court has never decided what damages are available to HPMDPC on its contract claim.

HPMDPC claims the Court decided this issue when denying the motion to dismiss and again on summary judgment. *Pl.'s Mvg. Br.*, \*6 (ECF No. 185). This is incorrect. First, Dr. Bandikatla never presented any arguments about whether HPMDPC could recover anything beyond nominal damages on her motion to dismiss. *See Dr. Bandikatla's Br. in Supp. of Mot. To Dismiss*, \*\*3-4 (ECF No. 45). Rather, Dr. Bandikatla's motion argued that the breach of contract claim was preempted by 20 C.F.R. § 655.731 and 8 USCS § 1182(n)(2)(C)(vi)(I). *Id*. The Court decided that issue against Dr. Bandikatla, finding that HPMDPC could recover damages under New York common law on a breach of contract theory. *Hemant Patel, M.D., P.C. v. Bandikatla*, Slip Op., \*8 (S.D.N.Y. Dec. 5, 2019).

What HPMDPC overlooks, however, is that, on a breach of contract claim against an employee for wrongful desertion, New York law limits the employer's recovery to the excess cost of replacing the employee; the employer is not entitled to lost profits. *See Valentine Dolls, Inc. v. McMillan*, 202 N.Y.S.2d 620, 622-23 (Sup. Ct. 1960)(internal

citations omitted)("The measure of damages for an alleged wrongful desertion or refusal to render the agreed service is, as a general rule, the difference between the agreed price and what the employer is required to pay to obtain the rendition of the service by another person. One is not permitted to recover a loss of profits in such a situation"); *see also Paguirigan v. Prompt Nursing Emp't Agency LLC*, No. 17-cv-1302 (NG)(JO), 2019 U.S. Dist. LEXIS 165587, at *34 n.9 (E.D.N.Y. Sept. 23, 2019)(citing *Valentine Dolls* and rejecting claim for lost profit in case where employees allegedly breached the duration of their employment). Because HPMDPC admits it never replaced Dr. Bandikatla, *Deposition of Hemant Patel*, Tr. 179:19-25 (ECF No. 124-2), it cannot recover anything beyond nominal damages.[2] *See, e.g., Valentine Dolls, Inc.*, 202 N.Y.S.2d at 622-23. The Court did not discard this law when denying Dr. Bandikatla's motion to dismiss.

Second, Dr. Bandikatla moved for summary judgment on the breach of contract claim on the grounds that HPMDPC could not establish damages. *Dr. Bandikatla's Br. in Supp. of S.J.*, **18-19 (ECF No. 126). However, the Court never addressed these arguments, finding that the employment contract was ambiguous and deferring on the remaining arguments. *Hemant Patel, M.D., P.C. v. Bandikatla (Bandikatla II)*, Slip Op., **4-6 (S.D.N.Y. Sept. 17, 2021)(ECF No. 151). Indeed, the Court's opinion mentions the word "damages" 11 separate times, all of them in the context of reciting the allegations in the Amended Complaint or the basis for Dr. Bandiaktla's TVPA claims, and never in the context of discussing what damages are available to HPMDPC. *See Id.* at **1-14. The Court's opinion also makes no reference to the competency of HPMDPC's proofs. *Id.*

---

[2] This is not an argument Dr. Bandikatla could have made a on a motion to dismiss because, at that point, she had no knowledge of whether HPMDPC had sustained any actual damages by virtue of replacing her.

Simply put, its incorrect to say, as HPMDPC does, that this Court expanded New York law to allow it to recover lost profits on a breach of contract claim for wrongful desertion. There's simply no discussion of this at all in any decision issued by the Court. It's equally incorrect to say that the Court passed judgment upon the competency of HPMDPC's proofs on damages. Thus, this portion of HPMDPC's motion should be denied.

<u>POINT IV</u>

<u>HPMDPC HAS NOT PAID DR. BANDIKATLA DAMAGES ON HER CONTRACT CLAIM AND ITS CLAIM TO THE CONTRARY IS ACTUALLY A CONCESSION THAT IT FAILED TO PERFORM UNDER THE CONTRACT.</u>

HPMDPC next argues that Dr. Bandikatla's entire breach of contract action should be dismissed--on a motion *in limine*--because it already paid the wages it owes her. *Pl.'s Mvg. Br.*, *8 (ECF No. 185). It claims it deposited the monies with the U.S. Department of Labor's Wage & Hour Division (DOL) after it found HPMDPC failed to pay Dr. Bandikatla for back wages and unlawful deductions. *Id.* at *9. HPMDPC contends that this fulfills its obligations and Dr. Bandikatla is no longer owed anything on her contract claim. *Id.* HPMDPC also claims that the Court found against Dr. Bandikatla on summary judgment on her claim that HPMDPC unlawfully deducted wages. *Id.* Both of these arguments are incorrect and, just as importantly, contain a concession that HPMDPC did not adequately perform under the contract.

We begin with the concession. By urging this Court to accept the DOL's determination, HPMDPC is effectively conceding the DOL's determination is correct and that it did not pay Dr. Bandikatla the appropriate wages and, thus, did not adequately perform under the parties' employment agreement. Dr. Bandikatla raised the DOL's

determination on her summary judgment motion as a defense to HPMDPC's claim, and the Court turned it away "because the record suggests that the DOL determination was based on an investigation rather than a full hearing. Patel would be precluded from litigating the issue only if Patel had had the opportunity to litigate DOL's findings and determination, which does not appear to be the case." *Bandikatla II*, Slip Op., *6. But if HPMDPC is now conceding that the DOL's determination that HPMDPC did not pay Dr. Bandikatla her wages is correct, it cannot possibly clam that it adequately performed under the contract. HPMDPC is effectively taking different positions before different judges in the same district.

Just as importantly, HPMDPC's purported payment to the DOL doesn't moot Dr. Bandikatla's claim for two reasons. First, Dr. Bandikatla has yet to receive these monies. Claiming to have deposited such funds with the DOL doesn't fulfill HPMDPC's obligations to Dr. Bandikatla. She was to receive those monies, not a government entity.

Second, the amount is incorrect. Dr. Bandikatla's contract claim seeks the following damages:

- Back wages in the amount of $5769.24, which represent backpay for not only Dr. Bandikatla's last two weeks of work, but also for unlawful withholding of wages in November 2016, when HPMDPC either reduced the rate of pay or withheld it altogether on the unlawful theory that Dr. Bandikatla was undergoing "training";

- $7,107.40 in legal fees and costs to HPMDPC's outside counsel, Jeffries & Corigliano, in connection with the initial H-1B application;

- Immigration filing fees of $1960 in connection with the initial H-1B application;

- $3,000.00 in legal fees for Assoyone & Associates in connection with the preparation and submission of the Amended Application, along with an additional $460 in USCIS filing fees.

Under federal law, forcing an H-1B employee to pay an employer's expenses, such as legal fees and filing fees for immigration approvals, constitutes an unlawful deduction in wages. *See* 20 C.F.R. § 655.731(c)(9)(ii), (c)(10) and (c)(11). The amounts unlawfully taken from Dr. Bandikatla, either in the form of non-payment or unlawful deductions, amount to over $15,000 before any pre- or post-judgment interest.

As is evident, the DOL's decision doesn't fully account for the immigration-related fees that Dr. Bandikatla incurred. We suspect this is partially due to the DOL accepting, without scrutiny, HPMDPC's specious claim that the outside counsel didn't represent HPMDPC and, instead, were Dr. Bandikatla's attorneys. For example, at their depositions, HPMDPC's principals, Hemant and Sweta Patel, advanced the frivolous claim that HPMDPC had never hired Jeffries & Corigliano as its attorneys. *See Deposition Transcript of Hemant Patel*, Tr. 54:6-23; *Deposition Transcript of Sweta Patel*, Tr. 89:12-21, attached as Exhibits A and B, respectively to the Declaration of Erin Donegan ("Donegan Decl."). At trial, we'll show this is a farce by revealing e-mails showing a long-standing relationship between HPMDPC and Jeffries & Corigliano, *see E-mail between Pinal Filmer and Jeffries & Corgiliano* (ECF No. 124-4); *E-mail between Pinal Filmer and Jessica Simpson* (ECF No. 124-5), and also producing Dina Corigliano to testify that her firm did, in fact, represent HPMDPC in connection with Dr. Bandikatla's immigration application. Thus, HPMDPC's claim that by depositing approximately $7,000 with the DOL it rendered Dr. Bandikatla's breach of contract claim moot is wrong.

Finally, we address HPMDPC's claim that the Court already ruled against her and found that payment of immigration-related expenses, including attorney fees, doesn't constitute an unlawful deduction. *See Pl.'s Mvg. Br.*, *10 (ECF No. 185).  Tellingly, HPMDPC provides no citation to the Court's decision to support its argument. *See Id*. And

that's because no such decision was rendered. The only time the Court's summary judgment opinion mentions HPMDPC forcing Dr. Bandikatla to pay immigration-related expenses is in the context of Dr. Bandikatla's discrimination claims under the New York State Human Rights Law and New York City Human Rights Law. *Bandikatla II*, Slip Op., *13. The Court found that "even assuming that Bandikatla's being forced to pay for her immigration-related expenses was an 'adverse employment action,'" the claim failed for lack of discriminatory intent. *Id*. There's nothing in the Court's decision that says Dr. Bandikatla did not pay such fees or that such fees were appropriate and not an unlawful deduction of wages. For these reasons, HPMDPC's attempt to exclude evidence of Dr. Bandikatla's breach of contract damages should be denied.

POINT V

HPMDPC'S EXHAUSTION OF ADMINISTRATIVE REMEDIES ARGUMENTS HAVE ALREADY BEEN REJECTED AND ITS CONTINUED INSISTENCE IS SIMPLY A FAILURE TO RESPECT THE COURT'S PRIOR DECISION.

HPMDPC also argues that Dr. Bandikatla should be precluded from introducing evidence showing that she was compelled to pay immigration-related fees. *Pl.'s Mvg. Br.*, **11-12 (ECF No. 185). It contends that such forced payments violate the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq*., and thus require the exhaustion of administrative remedies. *Id*. In addition, HPMDPC claims that the Labor Condition Application (LCA) and H-1B petition are not contracts and, therefore, cannot form the basis for Dr. Bandikatla's breach of contract claims. *Id*. We address these arguments in turn.

Dr. Bandikatla's breach of contract claim is not predicated on HPMDPC breaching the terms of the LCA and H-1B petition. Rather, her contract counterclaims are predicated on the parties' employment agreement dated October 15, 2015--the same agreement that forms the basis for HPMDPC's own breach of contract claim. The claim is quite simple: HPMDPC promised to pay Dr. Bandikatla a salary of $150,000 per year as part of the parties' employment agreement and failed to keep its promise by improperly withholding wages or forcing her to pay its business expenses, such as fees related to her immigration application. The fact that HPMDPC's conduct *also* violates federal law doesn't mean it gets a pass on Dr. Bandikatla's breach of contract claim.

Second, HPMDPC's claim that exhaustion of administrative remedies is required has already been rejected by this Court. In opposition to Dr. Bandikatla's motion for summary judgment, HPMDPC made these same arguments about exhaustion of administrative remedies and the INA. *See Pl.'s Opp. Br.*, **9-14 (ECF No. 140). The Court even generously permitted HPMDPC to file a sur-reply in support of these arguments. *See Order dated December 22, 2020* (ECF No. 149). But ultimately, the Court found HPMDPC's arguments lacked any merit:

> Patel argues that the Court lacks subject matter jurisdiction over Bandikatla's counterclaims because claims related to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, require that administrative remedies be exhausted, which Bandikatla purportedly has failed to do. . . . However, Bandikatla's counterclaims are not INA claims but rather use Patel's purported violations of the INA as evidence to support the counterclaims. . . . The Court has subject matter jurisdiction over Bandikatla's counterclaims.

> [*Bandikatla II*, Slip Op., *4 ( ECF No. 151)]

HPMDPC offers nothing new in the instant motion. It's simply recycling the arguments this Court previously rejected. This is improper and its motion on this point should be denied.

POINT VI

DR. BANDIKATLA IS ENTITLED TO ADVANCE HER CLAIM THAT SHE ADEQUATELY PERFORMED HER CONTRACTUAL OBLIGATIONS.

HPMDPC next attempts to preclude Dr. Bandikatla from arguing or instructing the jury on her contention that the only promise concerning the duration of her employment is contained in section 2 of the parties' employment agreement, which incorporates an "extenuating circumstances" exception to the contract's duration. *Pl.'s Mvg. Br.*, **14-15 (ECF No. 185). HPMDPC seems to claim that this argument should be disallowed because it is misleading and the USCIS's determination should not be binding--in other words, the jury should determine whether Dr. Bandikatla met the extenuating circumstances exception. *Id.* at **14-16. HPMDPC is wrong.

By way of background, the parties' employment agreement addresses the length of the contract in two separate places: in the first section and the second section. In the first section, which is captioned, "Employment, Acceptance and Term," the pertinent language reads:

> Employer hereby employs Physician as a full-time doctor in Employer's medical practice for an initial three-year term commencing within 90 days of J1 waiver and H1B approval (the "Initial Term"), unless extended or earlier terminated as provided herein; provided, however, that

The unmistakable language evinces a promise by the employer--HPMDPC--to "employ[] Physician . . . for an initial three-year term commencing within 90 days of J1

12

waiver and H1B approval . . . ." *Employment Agreement*, ¶ 1 (ECF No. 124-3).  This promise is consistent with the employer's obligations under the immigration scheme. 22 C.F.R. § 41.63(c)(4)(i) and (iii).

Admittedly, this is not the only place where the contract's duration is discussed. In section 2 of the Employment Agreement, it states in pertinent part:

> Physician will treat all patients regardless of their ability to pay and furthermore agrees to the contractual obligations set forth in section 214(l) of the Immigration and Nationality Act. Physician

*Employment Agreement*, ¶ 2 (ECF No. 124-3). Once, again, the language is unmistakable. The physician--Dr. Bandikatla--is "agree[ing] to the contractual obligations set forth in section 214(l) of the Immigration and Nationality Act." Section 214 of the INA, now codified at 11 U.S.C. § 1184(l)(1)(C)(ii), encompasses a three-year commitment from the employee subject to the extenuating circumstances exception:

> (ii) the alien agrees to begin employment with the health facility or health care organization within 90 days of receiving such waiver, ***and agrees to continue to work for a total of not less than 3 years (unless the Attorney General determines that extenuating circumstances exist***, such as closure of the facility or hardship to the alien, which would justify a lesser period of employment at such health facility or health care organization, in which case the alien must demonstrate another bona fide offer of employment at a health facility or health care organization for the remainder of such 3-year period)[11 U.S.C. § 1184(l)(1)(C)(ii)(emphasis added).]

By explicitly incorporating this provision, the employment agreement makes clear that Dr. Bandikatla agreed to work for HPMDPC for three years "unless the Attorney General[3] determines that extenuating circumstances exist."

---

[3] While INA, § 214(l) identifies the Attorney General as the decision-maker, subsequent to the enactment of the Homeland Security Act of 2002 (P.L. 107-296), these powers were reallocated to the Secretary of the Department of Homeland Security. 8 C.F.R. § 2.1.

In this case, it is undisputed that the USCIS--the agency now charged with implementing this regulation--found that Dr. Bandikatla had demonstrated extenuating circumstances and approved transfer of her H-1B Visa to Central Florida Medical Associates (CFMA). *H-1B Transfer Approval* (ECF No. 124-9). This is the crux of Dr. Bandikatla's defense as to why she didn't breach the employment agreement.

When viewed in this context, it's unclear what is misleading about Dr. Bandikatla's reliance upon a clear provision included in the contract that HPMDPC's counsel drafted. Indeed, the Court on summary judgment found her argument "colorable," but ultimately found the contract ambiguous and deferred the question of the contract's meaning to the jury. *See Bandikatla II*, Slip Op., *5 ("Reasonable minds might differ on whether the three-year term was without exception or whether the incorporation of 8 U.S.C. § 1184(l) also incorporated the statutory exception, particularly since the immigration statute requires the same three-year term of employment as the contract"). It makes no sense to argue, as HPMDPC now does, that Dr. Bandikatla cannot introduce evidence and argument on this issue, or that the Court cannot instruct the jury on the exception, because it is misleading. If Dr. Bandikatla's proposed jury charge--which this Court has yet to even review[4]--misstates the law in some way, the appropriate course is to modify the charge, not preclude Dr. Bandikatla from asserting a defense that the Court, in its summary judgment decision, already said presents a jury question.

Equally meritless is HPMDPC's argument that the USCIS's determination that Dr. Bandikatla met the extenuating circumstances exception should be excluded and that a jury should decide that issue. *See Pl.'s Mvg. Br.*, **15-16 (ECF No. 185). At the outset, this

---

[4] As instructed by the Court's chambers on September 16, 2022, the parties are to submit a full set of jury charges. These charges would be due one week before the March 6, 2023 trial date.

is inconsistent with HPMDPC's argument that the jury shouldn't hear any evidence or argument about the exception at all. How can a jury fairly decide an issue if Dr. Bandikatla cannot introduce any evidence or argument on it at all?

More to the point, the USCIS's determination is relevant and probative under FED. R. EVID. 401 and 402 and clearly admissible. As noted above, Dr. Bandikatla's position is that she obtained the requisite approvals from federal authorities, as is required by section 2 of the employment agreement. Thus, she was permitted, by the contract, to terminate her employment with HPMDPC when she did.

The faulty assumption underlying HPMDPC's argument is that a jury should decide whether Dr. Bandikatla met the extenuating circumstances exception. It seemingly wants to argue that the jury should find she did not meet the exception because her purported reasons for transferring her H-1B Visa are pretextual.[5]

But the employment contract agreed to by the parties does not defer this question to a jury, an arbitrator, or some other panel of jurists. Rather, by expressly incorporating Section 214(l) of the INA, the employment agreement leaves that determination to the federal government. *See Employment Agreement*, ¶ 2 (ECF No. 124-3); 11 U.S.C. § 1184(l)(1)(C)(ii). If HPMDPC wanted someone else to make that decision, or wanted to participate in any such process, it should have included those provisions in the employment contract. It did not.

Thus, as this Court indicated on its summary judgment decision, the question for the jury is whether the employment contract incorporates the extenuating circumstances exception. If so, then it must determine whether Dr. Bandikatla complied with that

---

[5] HPMDPC's argument on this point, though irrelevant, is specious at best. It seemingly wants this Court to find, as a matter of law, that someone cannot assist with the care of an elderly relative if they live 80 to 85 miles away. There's no basis for this assumption.

exception by obtaining the requisite approvals from the federal government. Evidence--such as the USCIS's determination--is obviously probative on this issue and admissible. What Dr. Bandikatla does not have to show, however, is that the jury should agree with the USCIS's determination.   That's not part of the contract. It's also an absurd interpretation of the extenuating circumstances provision, as it would require every employee seeking to invoke it to first file a declaratory judgment action and see if a court agrees that extenuating circumstances exist. The proposed jury charges--which we haven't even submitted yet to this Court--properly state the law and if the Court finds otherwise they can be modified. HPMDPC's arguments on this point should be rejected.

<u>POINT VII</u>

THE   TVPA   PROVIDES   FOR   PUNITIVE
<u>DAMAGES.</u>

Finally, HPMDPC argues that Dr. Bandikatla should be precluded from recovering punitive damages on her TVPA claim because she failed to present evidence of such damages. Punitive damages are available under the TVPA. *Macolor v. Libiran*, 2016 U.S. Dist. LEXIS 40566, at *16 (S.D.N.Y. Mar. 25, 2016). The evidence required to establish a basis for punitive damages is any evidence demonstrating that HPMDPC's conduct was malicious and reckless. *Morales v. Kavulich & Assocs., P.C.*, 294 F.Supp. 3d 193, 198-99 (S.D.N.Y. 2018). An act is malicious and reckless if it is done in such a manner and under such circumstances, as to reflect utter disregard for the potential consequences of the act or the well-being and rights of others. *Id.* The purpose of punitive damages is to punish wrongdoers for shocking conduct and to set an example in order to deter such persons and others from committing similar acts in the future. *Id.; see also Ditullio v. Boehm*, 662

F.3d 1091, 1096-97 (9th Cir. 2011)(permitting punitive damages for violations of the TVPA).

Dr. Bandikatla submits that HPMDPC's conduct, as proven at trial, will meet this standard. Among other evidence, Dr. Bandikatla will point to HPMDPC's manufactured claims against her then-employer, CFMA and its owner, for tortious interference when there was never a factual basis to support such a claim, and not even personal jurisdiction in New York over those parties. She will also point out HPMDPC's exorbitant and inflated demand for $10 million in damages, even though it never suffered any compensable damages--discovery has revealed that HPMDPC didn't even replace Dr. Bandikatla and, thus, suffered no recoverable loss. *See*, *e.g.*, *Valentine Dolls, Inc.*, 202 N.Y.S.2d at 622-23.

HPMDPC's attempt to litigate this issue at this pre-trial stage is improper. If the evidence doesn't support such an award, the Court may opt not to give the jury charge. What HPMDPC shouldn't be permitted to do, however, is have this Court decide that such a charge is inappropriate before the parties have even called their first witness. Thus, their motion should be denied.

## CONCLUSION

For these reasons, HPMDPC's supplemental motion *in limine* should be denied.

Respectfully submitted,

**ANDERSON & SHAH, LLC**
**ATTORNEYS AT LAW**
*Attorneys for Defendant-Counterclaimant*
*Thejaswi Bandikatla, M.D.*

By:  */s/ Roshan D. Shah*
Dated: September 29, 2022                    ROSHAN D. SHAH, ESQ.