UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEMANT PATEL, M.D., P.C.,

                    Plaintiff,

        -v-

THEJASWI BANDIKATLA, M.D.,

                    Defendant.

18-cv-10227 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.:

After a seven-day trial, a jury found plaintiff-counterdefendant, Hemant Patel, M.D., P.C. ("HPMDPC"), liable for breach of contract and for violating the Trafficking Victims Protection Act ("TVPA"). See Verdict, ECF No. 206. The jury awarded defendant-counterclaimant, Dr. Thejaswi Bandikatla, $4,657.40 on her breach of contract claim and the costs of her defense plus $45,000 in non-economic damages on her TVPA claim. Id. On April 4, 2023, Dr. Bandikatla filed a motion for attorneys' fees. See Mot. for Att'ys Fees and Costs, ECF No. 211. On April 21, 2023, HPMDPC moved for judgment notwithstanding the verdict on Dr. Bandikatla's TVPA claim. Notice of Pl. Post Trial Mot. for J. as a Matter of Law, ECF No. 214. Upon full consideration of the parties' written submissions, the Court denied HPMDPC's motion for judgment notwithstanding the verdict and granted Dr. Bandikatla's motion for attorneys' fees and costs by "bottom-line" order dated March

1

23, 2024. See 3/23/24 Order, ECF No. 227. This Opinion reconfirms that order and the explains the reasons for its rulings.

## I.   **Factual Background**

Dr. Bandikatla is a licensed physician, now practicing internal and geriatric medicine in Orlando, Florida. 3/8/23 Tr. 305.[1] Dr. Bandikatla was born in India and attended medical school there, at Kasturba Medical College. 3/8/23 Tr. 306-08. In 2012, she came to the United States on a J-1 visa for residency at the University of Connecticut. 3/8/23 Tr. 309-10. Following her three-year residency, Dr. Bandikatla obtained a one-year fellowship in geriatric medicine, which spanned July 2015 to June 2016. 3/8/23 Tr. 311. Dr. Bandikatla wished to remain in the United States following her fellowship; however, to do so, she needed to be accepted into the J-1 Visa Waiver Program, which allows foreign-born doctors, who agree to provide medical services to underserved communities for three-years, to remain in the United States. 3/6/23 Tr. 79; 3/8/23 Tr. 312.

During her search for a job that would qualify for that program, Dr. Bandikatla discovered a job opening at HPMDPC. 3/8/23 Tr. 313. HPMDPC is a medical practice that provides medical care to underserved communities in Harlem and the Bronx. 3/6/23 Tr. 72-

---

[1] The parties ordered only certain excerpts of the trial transcript. However, those excerpts are insufficient for the Court's purposes. Accordingly, the Court is citing to the full transcript that was provided by the court reporters.

74, 77. Dr. Hemant Patel is the CEO and a shareholder of HPMDPC, where he also works as a practicing physician. 3/6/23 Tr. 73-77; 3/13/23 Tr. 706. Over the years, HPMDPC has employed about a dozen individuals whom HPMDPC sponsored and assisted in obtaining J-1 and H1-B visas. 3/6/23 Tr. 80; 3/8/23 Tr. 318.

In July 2015, Dr. Bandikatla applied to HPMDPC and was offered a physician role. 3/8/23 Tr. 314-19. In October 2015, Dr. Bandikatla entered into an employment contract with HPMDPC, whereby HPMDPC offered to employ Dr. Bandikatla for three years to commence within 90 days of Dr. Bandikatla obtaining the required immigration status adjustment (i.e., obtaining a J-1 Visa waiver and H1-B approval). 3/8/23 Tr. 319; Harris Decl., Ex. 1, ECF No. 215-1. HPMDPC then assisted Dr. Bandikatla with obtaining the J-1 visa waiver (which she received in March 2016) and a H1-B visa (which she received in October 2016). 3/8/23 Tr. 320-27. Dr. Bandikatla then began working at HPMDPC in November of 2016. 3/8/23 Tr. 328.

In May 2017, Dr. Bandikatla married Dr. Naveen Bellam. 3/8/23 Tr. 363-64. Sometime in 2017, Dr. Bellam moved to Los Angeles to complete a fellowship in transplant cardiology at UCLA, and upon completion of his fellowship, he intended to move to New York City to be with Dr. Bandikatla. 3/8/23 Tr. 364-65. However, those plans changed when Dr. Bellam's grandfather was diagnosed with Parkinson's. 3/8/23 Tr. 365-66. Because of the declining health of

Dr. Bellam's grandfather, Dr. Bandikatla and Dr. Bellam began exploring their options for assisting Dr. Bellam's family with providing the necessary care to Dr. Bellam's grandfather. 3/8/23 Tr. 367-68. They decided that the best option was for Dr. Bandikatla to find an employer in Florida to whom she could transfer her visa and finish her three-year term of providing care to medically underserved communities. 3/8/23 Tr. 368-69. To transfer her visa, Dr. Bandikatla had to first obtain a job offer and sign an employment contract. 3/8/23 Tr. 369-70. Then, her new employer would need to file a petition with the federal government seeking to transfer her visa, and Dr. Bandikatla would need to prove to the federal government that extenuating circumstances required the transfer of her visa to Florida. 3/8/23 Tr. 370, 372. Then, she would need to wait for the Government's approval.

In July 2018, Dr. Bandikatla signed an employment contract with Central Florida Medical Associates ("CFMA"), and CMFA filed the required petition with the federal government in August 2018. 3/8/23 Tr. 371-78. In September 2018, the Attorney General and United States Immigration Services granted the petition. 3/8/23 Tr. 378. On September 17, 2018, Dr. Bandikatla submitted notice of her resignation to HPMDPC, indicating her last day would be October 5, 2018. 3/8/23 Tr. 379-85. But a few days after October 5, 2018, HPMDPC sued Dr. Bandikatla for millions of dollars. 3/8/23 Tr. 392.

## II.  **Procedural Background**

On October 9, 2018, HPMDC sued Dr. Bandikatla and two unnamed John Does in New York State Court. See Def. Notice of Removal, Ex. A ("Compl."), ECF No. 2-1. The complaint alleges that Dr. Bandikatla breached her employment agreement by failing to serve a full three-year term of employment at HPMDPC, and alleges that Dr. Bandikatla is liable for fraud, fraudulent concealment, breach of contract, breach of fiduciary duty, and prima facie tort. Id. ¶¶ 29-71. HPMDPC also sued the unnamed John Does (purportedly the New York corporation and doctor who hired Dr. Bandikatla) for tortious interference with contract, alleging that the John Does "intentionally, and with malice towards Plaintiff, induced Defendant Dr. Bandikatla, to breach her contractual obligations to Plaintiff." Id. ¶¶ 8-10, 72-78. As a remedy, HPMDPC sought a permanent injunction, specific performance, and millions of dollars in compensatory and punitive damages against Dr. Bandikatla; and sought a permanent injunction and $6 million in compensatory and punitive damages against the John Does.

On November 2, 2018, Dr. Bandikatla removed the case to federal court, invoking diversity jurisdiction. See Def. Notice of Removal, ECF No. 2. On February 15, 2019, HPMDPC filed an amended complaint, substituting in CFMA and Syed-Bilal Ahmed, M.D., for the John Does. See First Am. Compl. ("FAC"), ¶¶ 12-14, ECF No. 36. The FAC asserted claims for fraud, breach of contract, breach of

fiduciary duty, prima facie tort, and breach of the implied covenant of good faith and fair dealing against Dr. Bandikatla, and still sought a permanent injunction, specific performance, and millions of dollars in compensatory and punitive damages against her. Id. ¶¶ 53-109, 119-131. The FAC also asserted a claim for tortious interference with contract against CMFA and Dr. Ahmed, and sought a permanent injunction and $6.5 million in compensatory and punitive damages against them. Id. ¶¶ 110-18.

On May 16, 2019, Judge Schofield[2] dismissed CMFA and Dr. Amhed from the case. 5/16/19 Order, ECF No. 68. Judge Schofield then dismissed all but HPMPDC's breach of contract claim against Dr. Bandikatla. See 12/5/19 Op. and Order, at 4-6, 8-9, ECF No. 69. Shortly thereafter, Dr. Bandikatla filed counterclaims against HPMDPC for breach of contract, tortious interference with contract, violating the TVPA, and violating New York State and New York City Human Rights Law. Counterclaim, ¶¶ 68-111, ECF No. 74. On summary judgment, Judge Schofield dismissed all but HPMDPC's breach of contract claim and Dr. Bandikatla's counterclaims for breach of contract and liability under TVPA. See 9/17/21 Op. and Order, ECF No. 151.

On March 6, 2023, a jury trial commenced on HPMDPC's breach of contract claim and on Dr. Bandikatla's counterclaims for breach

---

[2] The case was initially assigned to Judge Lorna Schofield. On July 16, 2022, it was transferred to the undersigned for trial.

of contract and for a violation of the TVPA. On March 8, 2023, the Court ruled as a matter of law that Dr. Bandikatla did not breach the employment contract by departing prior to the end of the three-year term of employment for which she was hired because the contract unambiguously permitted Dr. Bandikatla to pursue and accept another employment offer if the Attorney General determined there were extenuating circumstances. See 3/8/23 Tr. 294-97, 299. The Court accordingly dismissed HPMDPC's breach of contract claim. 3/8/23 Tr. at 297, 304.

After both sides rested, HPMDPC moved under Federal Rule of Civil Procedure 50(a)(1) for judgment as a matter of law on Dr. Bandikatla's counterclaims. 3/13/23 Tr. 769. As relevant here, HPMDPC argued there was insufficient evidence upon which a jury could find it liable for violating the TVPA. 3/13/23 Tr. 781-85. Specifically, HPMDPC argued there was insufficient evidence upon which a jury could find that HPMDPC used the law for an unintended purpose with the requisite intent. Id. The Court denied the motion because there was sufficient evidence on the TVPA claim to raise a jury triable issue. Id.

On March 14, 2023, the jury rendered its verdict and found HPMDPC liable for breach of contract and for violating the TVPA. The jury awarded Dr. Bandikatla $4,657.40 on her breach of contract claim and the costs of her defense plus $45,000 in non-economic damages on her TVPA claim. See Verdict. After the jury rendered

7

its verdict, the Court permitted Dr. Bandikatla to file a motion for attorneys' fees and HPMDPC to file a motion for judgment notwithstanding the verdict. 3/14/23 Tr. 892-94.

## III. __Judgment Notwithstanding the Verdict__

The Court first addresses HPMDPC's motion for judgment notwithstanding the verdict.[3] For the reasons discussed below, the Court denies the motion in full.

### a. Legal Standard

To grant a motion for judgment notwithstanding the verdict, "the Court must find that a reasonable jury would not have a legally sufficient evidentiary basis to find for the non-movant." Perry v. City of New York, 78 F.4th 502, 517 (2d Cir. 2023).[4] Accordingly, "[s]uch a motion may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." Brady v. Wal-Mart Stores, Inc.,

---

[3] HPMDPC erroneously brought its motion under Federal Rule of Civil Procedure 50(a)(1). See Mem. of Law in Supp. of Mot. for J. as a Matter of Law ("Pl. Opening Mem."), at 1-2, ECF No. 216. HPMDPC subsequently asked the Court to overlook this error and consider the motion under Rule 50(b). Reply Mem. of Law in Supp. of Mot. for J. as a Matter of Law ("Pl. Reply Mem."), at 1, ECF No. 225. The Court will consider the motion as one filed under Rule 50(b).

[4] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

531 F.3d 127, 133 (2d Cir. 2008). In making this determination, the Court must "give th[e] [non-moving] party the benefit of all reasonable inferences that the jury might have drawn in that party's favor." Perry, 78 F.4th at 517. The Court also may not "assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." Black v. Finantra Cap., Inc., 418 F.3d 203, 209 (2d Cir. 2005). "The standard for granting [such] a motion . . . is appropriately strict," Stubbs v. Dudley, 849 F.2d 83, 85 (2d Cir. 1988), and "[t]he burden on the movant is particularly heavy where, as here, the jury has deliberated in the case and actually returned its verdict," Perry, 78 F.4th at 517.

### b. Analysis

HPMDPC has only moved for judgment notwithstanding the verdict on the TVPA counterclaim.[5] As relevant here, a person is liable under the TVPA when they "knowingly . . . obtain the labor

---

[5] HPMDPC also re-raises its argument that the Court lacks subject matter jurisdiction because Dr. Bandikatla's counterclaims are based upon a violation of 8 U.S.C. § 1182(n), which does not provide for a private right of action, and because her claims under that statute are unexhausted. Pl. Opening Mem., at 19-21. The Court rejects that argument for the same reasons set out in Judge Schofield's summary judgment opinion, i.e., that her counterclaims are not brought under 8 U.S.C. § 1182(n) but under 18 U.S.C. § 1595 and state law. 9/17/21 Op. and Order, at 4. HPMDPC also raises a res judicata argument, but HPMDPC has not pointed to any claim presented to the Department of Labor's Wage and Hour Division that has anything to do with the TVPA claim, which is the only claim at issue on this motion. See Pl. Opening Mem., at 21-22.

or services of a person . . . by means of the abuse or threatened abuse of law or legal process." 18 U.S.C. § 1589(a)(3). The statute defines "abuse or threatened abuse of law or legal process" as "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." 18 U.S.C. § 1589(c)(1). <u>See also</u> <u>Aguirre v. Best Care Agency, Inc.</u>, 961 F. Supp. 2d 427, 444 (E.D.N.Y. 2013). As this Court instructed the jury, "[a] party abuses the legal process by taking one or more steps in connection with an actual or threatened lawsuit that, even when viewed most favorably to that party, has no reasonable basis in fact." Instrs. of Law to the Jury, at 13, ECF No. 205.[6] A mere attempt to violate the TVPA is sufficient for a party to be found liable. 18 U.S.C. § 1594(a).

### i. Waiver

Before turning to the substance of HPMDPC's arguments, the Court must first address Dr. Bandikatla's argument that HPMDPC waived some of its arguments in support of its motion by failing to raise those arguments in its prior Rule 50(a)(1) motion made

---

[6] Counsel for HPMDPC did not object to this portion of the jury instructions. <u>See</u> 3/13/23 Tr. 792-98; 3/13/23 Pl. Letter, at 1-2, ECF No. 204.

prior to verdict. A Rule 50(b) "motion is limited to those grounds that were specifically raised in the prior motion for [judgment as a matter of law]; the movant is not permitted to add new grounds after trial." <u>Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.</u>, 136 F.3d 276, 286 (2d Cir. 1998). Here, the grounds raised at the Rule 50(a) stage were: (1) a lack of evidence that HPMDPC "used [the law] for a purpose that it was not intended for"; (2) a lack of evidence that "Dr. Patel acted with any intent"; and (3) that the damages that HPMDPC sought were appropriate. 3/13/23 Tr. 781-85.

Now, on its Rule 50(b) motion, HPMDPC's main argument is that there was insufficient evidence for a reasonable jury to conclude that the lawsuit was wrongfully commenced (as the damages sought were appropriate as a matter of law) or for a reasonable jury to find that HPMDPC abused or threaten to abuse the legal process (as there was no evidence HPMDPC used the legal process for an improper purpose). Pl. Opening Mem., at 5-17. Those arguments are preserved because they relate to the first element of a TVPA claim (that HPMDPC abused or threatened to abuse the legal process), which HPMDPC challenged at the Rule 50(a) stage. Cf. <u>Galdieri-Ambrosini</u>, 136 F.3d at 286-87 (a ground is specifically articulated in a Rule 50(a) motion if it "at least identif[ies] the specific element that the defendant contends is insufficiently supported.").

It is a closer question whether HPMDPC preserved its argument that there was insufficient evidence of Dr. Patel's intent to cause

serious harm. See Pl. Opening Mem., at 17-19. To the extent HPMDPC is arguing that there was insufficient evidence to show intent to obtain Dr. Bandikatla's labor by abusing or threatening to abuse the legal process, that is preserved by HPMDPC's prior argument, at the Rule 50(a) stage, that Dr. Patel did not act with the requisite intent. See 3/13/23 Tr. 785. However, to the extent HPMDPC is now arguing that it is entitled to judgment as a matter of law because there was insufficient evidence of an intent to cause serious harm, that is waived because the entirety of HPMDPC's colloquy with the Court was confined to whether HPMDPC abused the law. See 3/13/23 Tr. 781-85.[7] Accordingly, HPMDPC's argument that Dr. Patel lacked intent is only preserved as it relates to the abuse of the legal process.

### ii. Sufficiency of the Evidence

The Court now turns to the merits of HPMDPC's motion. The thrust of the motion is that there is insufficient evidence to

---

[7] Even assuming arguendo this argument was not waived, it is irrelevant because the jury was only instructed to find HPMDPC liable for violating the TVPA if there was an abuse or threatened abuse of the legal process. See Instrs. of Law to the Jury, at 13-14. Threatening serious harm is a separate predicate for TVPA liability, which was not presented to the jury because defense counsel admitted it entirely overlapped with their abuse of the legal process theory. Compare 18 U.S.C. § 1589(a)(2), with 18 U.S.C. § 1589(a)(3). See 3/13/23 Tr. 798, 808. Accordingly, the failure to adduce evidence that Dr. Patel "threatened [Dr. Bandikatla] with serious harm, or that [HPMDPC] intended her to believe that such harm would befall her if she left her employment" does not undermine the jury's verdict, which was predicated on a different theory of TVPA liability. See Pl. Opening Mem., at 18.

show HPMDPC abused or threatened to abuse the legal process with the requisite intent. See Pl. Opening Mem., at 10-19. For the reasons discussed below, the Court disagrees.

First, there was ample evidence from which a reasonable jury could conclude that HPMDPC abused the legal process by filing a lawsuit that had no basis in fact in order to coerce Dr. Bandikatla to return to HPMDPC. For starters, the jury heard testimony that cast doubt on HPMDPC's decision to sue Dr. Bandikatla for breach of contract. Dr. Patel admitted that he could not find where in the contract it stated Dr. Bandikatla had agreed to work at HPMDPC for three years, even though that was the entire basis for the breach of contract claim. 3/6/23 Tr. 154-56. Although Dr. Patel later clarified that the basis for his position was a reference to Section 214 of the Immigration and Nationality Act ("INA") in the contract, he admitted that he never verified (before filing the lawsuit or at any point during the lawsuit) what Section 214 said. 3/6/23 Tr. 157-58; 3/13/23 Tr. 764-65. Additionally, even though Dr. Patel had this opinion about Dr. Bandikatla's contractual obligations, Dr. Patel said nothing to Dr. Bandikatla about her resignation, and no one at HPMDPC indicated her resignation would breach the contract. 3/7/23 Tr. 178-79, 182-83, 245-46; 3/8/23 Tr. 386-87. However, just four days after her last day, HPMDPC filed a lawsuit against Dr. Bandikatla seeking millions of dollars, which Dr. Patel admitted was filed to get Dr. Bandikatla to come back to

work at HPMDPC. 3/6/23 Tr. 121, 137; 3/7/23 Tr. 245, 251, 254; 3/8/23 Tr. 392; 3/10/23 Tr. 598; 3/13/23 Tr. 758-59. A jury could reasonably infer from this evidence that HPMDPC had no factual basis for filing a breach of contract claim against Dr. Bandikatla and only did so to try to force her to return to her job at HPMDPC.

The jury also heard testimony regarding HPMDPC's decision to sue Dr. Bandikatla's new employer, CFMA and Dr. Ahmed. First, the jury heard that Dr. Bandikatla never told Dr. Patel where she was leaving to work; nevertheless, HPMDPC sued John Doe Inc. 1 and John Doe 2, alleging that they were New York-based employers who "intentionally and with malice towards plaintiff induced . . . Dr. Bandikatla to breach her contractual obligations" to HPMDPC. 3/7/23 Tr. 246; 3/8/23 Tr. 399-400, 417; 3/13/23 Tr. 756. Next, the jury heard that in February 2019, HPMDPC filed an amended complaint, substituting CMFA and Dr. Ahmed in for John Doe Inc. 1 and John Doe 2, and sought millions of dollars in damages against them. 3/7/23 Tr. 247-48; 3/9/23 Tr. 417-18. HPMDPC took this action despite Dr. Patel admitting that he did not know or speak with anyone at CMFA but sued them anyway because it was "not acceptable" for someone to interfere with his contract. 3/13/23 Tr. 762-63. The jury then heard that the filing of the lawsuit against CMFA resulted in Dr. Bandikatla being terminated from CMFA, which meant she only had 60 days to find new employment or she would need to leave the country. 3/9/23 Tr. 416, 419-20, 423, 471. Based on this

evidence, the jury could reasonably conclude that HPMDPC sued CMFA and Dr. Ahmed, without an adequate factual basis, to get Dr. Bandikatla fired so she would be scrambling for a job.

Additionally, there was ample evidence showing that the request for millions of dollars in damages had no basis in fact. First, Dr. Patel admitted that the damages request in the complaint had no factual basis. He testified that the damages request was exaggerated and that he never thought he would be able to collect that amount. 3/13/23 Tr. 759, 765. Dr. Patel only sought that amount because he thought it was "common practice." 3/13/23 Tr. 760. Worse yet, Dr. Patel testified that Dr. Bandikatla had been losing money for HPMDPC, which casts further doubt on the damages sought. 3/7/23 Tr. 255.

Second, Kishan Patel, the Vice President of Clinical Operations at HPMDPC, testified that he signed interrogatories, which provided calculations to substantiate HPMDPC's damages request, under penalty of perjury, even though he had no basis for attesting to the veracity of those calculations. 3/10/23 Tr. 594, 598-99, 601-09, 611-13, 620-22. Specifically, the interrogatories stated that $1,042,500.92 in revenue and $598,784.40 in costs were attributable to Dr. Bandikatla, but Kishan Patel had no idea how those figures were calculated. 3/10/23 Tr. 601-04. Additionally, the interrogatories included tables, which had computations to justify the damages amount, but Kishan Patel did not know how the

tables were calculated and did not analyze any documentation to verify the calculations. In fact, his testimony called into doubt some of the calculations included in the tables. 3/10/23 Tr. 602, 604-09, 611-13, 620-22. In sum, there was more than sufficient evidence from which a jury could conclude that the damages sought in the complaint and throughout the litigation had no basis in fact.

HPMDPC, for its part, ignores all of the evidence presented, and instead myopically focuses on only a sliver of the evidence to argue that all "a reasonable jury could infer [is] that [p]laintiff used the civil law suit [sic] brought pursuant to New York State common law to sue [Dr.] Bandikatla and other unnamed individuals." Pl. Opening Mem., at 14. That argument flies in the face of the evidentiary record. As recounted above, there was extensive evidence about the basis for the breach of contract claim, the damages sought, and the addition of CMFA and Dr. Ahmed as parties to the lawsuit from which a reasonable jury could conclude that HPMDPC abused -- indeed, grossly abused -- the legal process by filing this lawsuit, with no basis in fact, for the purpose of coercing Dr. Bandikatla to return to work at HPMDPC.

HPMDPC then further attempts to undermine the sufficiency of the evidence by arguing Dr. Bandikatla did not present certain forms of evidence. Specifically, HPMDPC argues that there was no evidence: (1) that a state jury would not have awarded the damages

sought; (2) that the damages were excessive based on other jury verdicts; (3) that HPMPDC was legally prohibited from filing this lawsuit seeking specific performance and damages; and (4) that HPMDPC was barred from suing after the Attorney General found there were extenuating circumstances. Pl. Opening Mem., at 14-15. However, there is no rule that evidence of an abuse of law must take a certain form. Furthermore, just because HPMDPC was legally permitted, in the abstract, to file this lawsuit does not mean it was permitted to file a lawsuit without any factual basis to coerce Dr. Bandikatla to return to work, as it did here. Finally, even taking HPMDPC's argument on its own terms, it fails. There was, in fact, evidence that a jury could not have awarded the amount sought and that the amount sought was excessive because the testimony of Dr. Patel and Kishan Patel indicated there was no basis for the damages that were being sought.

The Court now turns to the second element that HPMDPC challenges, intent, and finds that there is sufficient evidence upon which a jury could find that HPMDPC undertook its legal actions with the intent of obtaining Dr. Bandikatla's labor. Dr. Patel admitted on multiple occasions he filed this lawsuit to get Dr. Bandikatla to come back to work. 3/6/23 Tr. 121, 137; 3/7/23 Tr. 251, 254; 3/13/23 Tr. 758-59. The jury also heard that the lawsuit had its intended effect. Dr. Bandikatla testified that the lawsuit made her feel "terrified" and "trapped" and that she

interpreted HPMDPC's suing her new employer as an attempt to pressure her to return to HPMDPC. 3/8/23 Tr. 392, 400. Finally, the jury heard that this is not the first time HPMDPC sued a physician that departed the practice without completing a three-year term. Dr. Egbert, who was also a physician at HPMDPC, testified that after she was approved for an extenuating circumstances exception and left for a new job, HPMDPC sued her and her new employer for millions of dollars. 3/9/23 Tr. 533-44. Further, when Dr. Egbert told Dr. Patel she was leaving, Dr. Patel told her, "this isn't a grocery store where you could just come and go." 3/9/23 Tr. 541. In sum, there was sufficient evidence from which a jury could conclude that HPMDPC intentionally abused the legal process to coerce Dr. Bandikatla to provide her labor.

Despite the ample evidentiary basis for a finding of scienter, HPMDPC argues that Dr. "Bandikatla failed to present any evidence upon which the jury could conclude that [HPMDPC] exerted pressure on her to take or refrain from taking some action." Pl. Opening Mem., at 18. HPMPDC believes this is so because "it is undisputed that [Dr.] Bandikatla was no longer employed by [HPMDPC] at the time of the commencement of the action." Id.[8] The Court disagrees. The fact that Dr. Bandikatla was no longer employed at the time of

---

[8] HPMDPC's motion also references evidence related to a Department of Labor Investigation; however, HPMDPC concedes this evidence was never presented to the jury. See Pl. Opening Mem., at 18-19. It is thus irrelevant.

the lawsuit is not dispositive. TVPA liability can be predicated on an attempt to abuse the law "in order to exert pressure on another person to cause that person to take some action or refrain from taking some action," which would include filing a lawsuit to attempt to force someone to return to work as much as it would include successfully forcing someone to remain in one's employ. 18 U.S.C. §§ 1589(c)(1), 1594(a) In sum, the Court rejects HPMDPC's argument that there was insufficient evidence of scienter.

Although HPMDPC does not contest the evidentiary basis for the third and fourth elements of the TVPA claim (substantial step and injury), the Court finds in any event that there was more than sufficient evidence upon which the jury could find that both elements are satisfied. As for the third element, the fact that HPMDPC filed and then maintained this lawsuit, including by filing an amended complaint and interrogatories, is more than a sufficient basis for the jury to find that HPMDPC took a substantial step to obtain Dr. Bandikatla's labor by abusing the legal process. As for the fourth element, the jury heard sufficient evidence upon which it could find that Dr. Bandikatla was emotionally and financially harmed. Dr. Bandikatla testified that the lawsuit caused her to suffer anxiety, panic attacks, and sleeplessness, which was then corroborated by her husband's testimony. 3/9/23 Tr. 434-35; 3/10/23 Tr. 655. Additionally, Dr. Bandikatla testified that she had to pay CMFA's legal fees to defend them against HPMDPC's

lawsuit. 3/9/23 Tr. 420. In sum, the jury had a sufficient --
indeed, very substantial -- evidentiary basis to find that HPMDPC
violated the TVPA.

### iii. Legal Challenges

Setting aside its unavailing attacks on the sufficiency of
the evidence, HPMDPC raises three legal arguments as to why it is
entitled to judgment as a matter of law. For the reasons explained
below, each of its arguments is meritless.

First, HPMDPC argues that the damages sought in its pleadings,
even if excessive, are permissible under the Federal Rules of Civil
Procedure and New York State law and thus cannot provide evidence
that the lawsuit was "wrongfully commenced." Pl. Opening Mem., at
5-10.[9] This argument reflects a fundamental misunderstanding of

---

[9] HPMDPC also argues that the jury was erroneously instructed "that
the action was wrongfully commenced," which HPMDPC claims was
"highly prejudicial" and "took the determination of wrongful
commencement from the jury." Pl. Opening Mem., at 8. HPMDPC
misconstrues the Court's instructions. The Court never told the
jury that the lawsuit was wrongfully commenced. Instead, the Court
instructed the jury that it may find that "[a] party abuses the
legal process by taking one or more steps in connection with an
actual or threatened lawsuit that, even when viewed most favorably
to that party, has no reasonable basis in fact." Instrs. of Law to
the Jury, at 13. That did not take any determination away from the
jury. Further, to the extent HPMDPC is referencing the instruction
that an economic injury can take the form of "the cost of defending
an abusive lawsuit wrongly brought by Hemant Patel, M.D., P.C.
against Dr. Bandikatla to try to force her to return to work,"
that instruction does not tell the jury that the lawsuit was
wrongfully commenced. Id. at 14. Instead, it explains to the jury
that it may find that Dr. Bandikatla was economically injured if
she expended costs defending against a wrongfully commenced suit.
HPMDPC's argument is thus without basis.

the basis for HPMDPC's liability under the TVPA. The basis for its liability is not that it filed a complaint that is procedurally improper or forbidden. Rather, the basis for its liability is that it filed a lawsuit pursuing claims and seeking an exaggerated amount damages for which it had no factual basis, in order to coerce Dr. Bandikatla to return to work at HPMDPC. Thus, it is irrelevant that procedurally, HPMDPC can request an exaggerated damages amounts because under the TVPA, HPMDPC cannot use an exaggerated damages request that has no factual basis to coerce Dr. Bandikatla to return to HPMDPC. Cf. 18 U.S.C. § 1589(c)(1) (defining "abuse or threatened abuse of law or legal process").

Furthermore, the exaggerated request for damages in the complaint was not the only evidence offered to show that HPMDPC abused the law. The evidence also showed that HPMDPC had no basis for suing Dr. Bandikatla for breach of contract, had no basis for suing her new employer for tortious interference with contract, continued to press its exaggerated damages claim throughout the litigation by filing interrogatories signed by an individual who had no knowledge regarding the accuracy of the damages figures contained therein, and filed this lawsuit with the intent of getting Dr. Bandikatla to return to HPMDPC. All of that evidence, even without the exaggerated damages request in the complaint, would be sufficient to show that HPMDPC abused the legal process.

Thus, even if HPMDPC's argument is credited, it would not require the Court to overturn the verdict.

Second, HPMDPC argues that its claim for damages was appropriate as a matter of law and consistent with the award of damages in other cases. Pl. Opening Mem., at 16-17.[10] However, the cases that HPMDPC cites do not show that its request here for punitive and compensatory damages was valid. To start, HPMDPC relies upon case law about whether a jury's damages award is so excessive that it must be set aside. See N.Y. C.P.L.R. § 5501(c) (indicating a jury "award is excessive or inadequate if it deviates materially from what would be reasonable compensation"); Nardelli v. Stamberg, 44 N.Y.2d 500, 504 (1978). That case law, however, has no bearing on whether a demand for punitive and compensatory damages in a complaint is excessive. Second, HPMDPC relies upon factually inapposite cases, where punitive damages were awarded and upheld. See, e.g., TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443, 446 (1993) (claim for slander of title); Sanders v. Gardner, 7 F. Supp. 2d 151, 156 (E.D.N.Y. 1998) (claims for fraud, breach of fiduciary duty, and violations of the securities laws

---

[10] To the extent this is just another way of arguing that Dr. "Bandikatla failed to present any evidence that the damages demand stated in the ad damnum clause in [p]laintiff's complaint was excessive," Pl. Opening Mem., at 17, that is wrong. For the reasons laid out above, the testimony of Dr. Patel and Kishan Patel provided more than a sufficient evidentiary basis to show that the damages sought were excessive and without factual basis.

against a broker); Honzawa v. Honzawa, 268 A.D.2d 327, 329 (1st Dep't 2000) (claim for malicious prosecution); CSX Transp., Inc. v. Palank, 743 So.2d 556, 558 (Fl. Ct. App. 1999) (claim for wrongful death). The fact that the punitive damages awarded in other dissimilar cases were upheld in no way shows that the request for punitive and compensatory damages here was warranted under the facts and circumstances of this case.

Third, for the first time on reply, HPMDPC argues it is entitled to judgment notwithstanding the verdict because filing this lawsuit did not constitute abuse of process under New York law. Pl. Reply Mem., at 6-9. This argument, however, is waived because it was raised for the first time on reply and thus the Court need not consider it. United States v. Hill, 462 F. App'x 125, 127 n.2 (2d Cir. 2012); Smith v. Wells Fargo Bank, N.A., 666 F. App'x 84, 88 (2d Cir. 2016). Moreover, even if this argument were properly preserved, it is without merit. HPMDPC believes that if the filing of this lawsuit did not constitute an abuse of process under state law, then it cannot constitute abuse of the legal process under the TVPA. That is wrong. The meaning of abuse of process under state law does not control the meaning of abuse of the legal process under the TVPA, especially, whereas here, Congress provided a specific definition of what it means to "abuse or threaten[] abuse of law or legal process." 18 U.S.C. § 1589(c)(1). See Spina v. Dep't of Homeland Sec., 470 F.3d 116,

126 (2d Cir. 2006) ("[T]he principle is well established that, unless Congress plainly manifests an intent to incorporate diverse state laws into a federal statute, the meaning of a federal statute should *not* be dependent on state law."); United States v. Castillo, 36 F.4th 431, 442 (2d Cir. 2022) (similar). And here, there is more than sufficient evidence upon which a reasonable jury could conclude that HPMDPC abused or threatened to abuse the legal process, within the meaning of the TVPA.

### c. Conclusion

In sum, the Court finds all of HPMDPC's legal and evidentiary challenges to be entirely without merit and denies the motion for judgment notwithstanding the verdict.

## IV.  Motion for Attorneys' Fees and Costs

The Court now addresses Dr. Bandikatla's motion for attorneys' fees and costs. For the reasons explained below, the Court awards Dr. Bandikatla's attorneys' fees in the amount of $259,701 and costs in the amount of $10,206.38.

### a. Entitlement to Attorneys' Fees and Costs

The parties first dispute whether Dr. Bandikatla is entitled to recover attorneys' fees and costs. The Court finds that Dr. Bandikatla is entitled to recover attorneys' fees and costs on three bases: (1) the jury's award of economic damages; (2) a fee-shifting provision in the Employment Agreement; and (3) the fee-shifting provision of the TVPA.

First, the jury's award of damages and the fee-shifting provision of the Employment Agreement will allow Dr. Bandikatla to recover her out-of-pocket fees and expenses. Specifically, on the TVPA claim, the jury awarded economic damages in the amount of the costs of her defense, which the jury instructions defined to include attorneys' fees. See Verdict (indicating Dr. Bandikatla "[i]s entitled to the costs of defense"); Instrs. of Law to the Jury, at 16 (explaining that in terms of economic damages, if the jury "determine[s] that Dr. Patel's lawsuit against Dr. Bandikatla was itself an abuse of the Trafficking Victims Protection Act, you should award Dr. Bandikatla the costs of defending the suit, including attorneys' fees"). Second, Dr. Bandikatla is entitled to recover her out-of-pocket attorneys' fees and costs expended on her breach of contract counterclaim under the Employment Agreement. See Verdict (finding HPMDPC liable for breach of contract and awarding $4,657.40 in damages); First Shah Decl., Ex. 1, at 6, ECF No. 213-1 (providing that if HPMDPC "is determined to have breached th[e] Agreement or any of its undertakings hereunder," then HPMDPC "shall . . . pay to [Dr. Bandikatla] all of [her] costs and expenses, including reasonable attorneys, incurred in connection with [Dr. Bandikatla's] enforcement of th[e] Agreement."). However, the attorneys' fees and costs that Dr. Bandikatla is entitled to recover under the contract overlap with the costs that the jury awarded, because under a contractual

fee-shifting provision "a defendant cannot be ordered to pay as attorney's fees an amount greater than what the plaintiff must pay its attorneys under the agreement in place between the plaintiff and its counsel." KLS Diversified Master Fund, L.P. v. McDevitt, 532 F. Supp. 3d 126, 140 (S.D.N.Y. 2021). Any fees and costs that Dr. Bandikatla expended on the breach of contract claim necessarily fall within the broader category of the costs she expended on her defense, as that includes the fees and costs she expended to defend against the lawsuit and pursue her counterclaims. Accordingly, the Court will not analyze the contractual fee-shifting provision as a separate basis when it calculates the fees and costs that Dr. Bandikatla can recover.[11]

Separate and apart from the jury's award of damages and the contractual fee-shifting provision, the TVPA independently allows for the recovery of reasonable attorneys' fees because Dr. Bandikatla prevailed on her TVPA claim at trial. 18 U.S.C. § 1595(a) ("An individual who is a victim of a violation of this

---

[11] For the sake of clarity, HPMDPC is also wrong to suggest that Dr. Bandikatla cannot recover attorneys' fees under the contract because the issue "was not tried by the jury." Pl. Resp. to Mot. for Att'ys Fees and Costs ("Pl. Opp'n"), at 10, ECF No. 217. The jury did decide this issue when it found that HPMDPC breached the Employment Agreement, as the contract entitles her to fees and expenses if HPMDPC breached the agreement. See Verdict; McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (2d Cir. 1993); New Shows, S.A. de C.V. v. Don King Prods., Inc., No. 95 CIV. 8851, 1999 WL 553780, at *11 (S.D.N.Y. July 29, 1999). See also Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC, 496 F. Supp. 2d 362, 363-64 (S.D.N.Y. 2007).

chapter may bring a civil action against the perpetrator . . . and may recover damages and reasonable attorneys fees."). See, e.g., Treadway v. Otero, 2:19-CV-00244, 2022 WL 17729256, at *1 (S.D. Tex. June 9, 2022); Roe v. Howard, 1:16-cv-562, 2020 WL 1325350, at *1 (E.D. Va. Mar. 20, 2020); Ramos v. Hoyle, 08-21809-CIV, 2010 WL 11505867, at *2 (S.D. Fl. Apr. 9, 2010); Echon v. Sackett, 14-cv-03420, 2019 WL 8275344, at *11 (D. Colo. Feb. 12, 2019).[12] And, in general, under a federal fee shifting statute, a party may recover fees above and beyond those provided for under an agreement between a party and its counsel. See Parker Hannifin Corp. v. N. Sound Prop., No. 10 Civ. 6359, 2013 WL 3527761, at *3-*4 (S.D.N.Y. July 12, 2013). The TVPA's fee-shifting provision is accordingly a separate and distinct basis for recovery.

HPMDPC raises two reasons it believes Dr. Bandikatla should not recover any attorneys' fees and costs, both of which are

---

[12] However, Dr. Bandikatla is not entitled to recover attorneys' fees under New York Labor Law Section 198(1-a), which allows the recovery of attorney's fees "[i]n any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails." N.Y. Labor Law § 198(1-a). "As [the Court of Appeals of New York] ha[s] made clear, the attorney's fees remedy provided for in section 198(1-a) must relate to wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6." Konkur v. Utica Acad. Of Sci. Charter Sch., 38 N.Y.3d 38, 43-44 (2022). Dr. Bandikatla is thus not entitled to attorney's fees under this statutory provision because the only basis specified, in her answer or joint pretrial consent order, for her breach of contract claim were violations of federal law, not state law. See Counterclaim, ¶¶ 23, 44, 63, 92-96; Joint Pretrial Consent Order, at 31, ECF No. 190.

baseless. First, HPMDPC argues that Dr. Bandikatla is not entitled to recover attorneys' fees and costs because her lawyers did not comply with 22 NYCRR § 603.25 and 22 NYCRR § 1215.1. See Pl. Opp'n, at 1-5. That is wrong. Dr. Bandikatla's lawyers compiled with the requirements of 22 NYCRR § 1215.1 because Dr. Bandikatla has written engagement letters with both Scarinci & Hollenbeck and Anderson & Shah. See Bandikatla Reply Aff., Ex. A, ECF No. 221-1; Bandikatla Reply Aff., Ex. B, ECF No. 221-2. Additionally, 22 NYCRR § 603.25 is facially inapplicable to the agreements at issue here because neither agreement provides that the "attorney's compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof." See 22 NYCRR § 603.25. Dr. Bandikatla's agreement with Scarinci & Hollenbeck requires her to pay the firm by the hour, and the agreement with Anderson & Shah is not contingent merely because it provides that her attorneys will only be compensated above the capped fees she owes if the firm prevails on one of the fee-shifting claims.[13] Bandikatla Reply Aff., Ex. A; Bandikatla Reply Aff., Ex. B.

---

[13] Even assuming arguendo either of the agreements are subject to 22 NYCRR § 603.25, none of HPMDPC's cited cases stands for the proposition that a prevailing party cannot recover attorneys' fees from a losing party because of a failure to file a fee agreement. See, e.g., Micro-Spy, Inc. v. Small, 69 A.D.3d 687, 688-89 (2d Dep't 2010) (dispute between attorney and client); Giano v. Ioannou, 78 A.D.3d 768, 770 (2d Dep't 2010) (dispute between two attorneys).

Second, the Court rejects HPMDPC's argument that Dr.
Bandikatla is not entitled to recover her costs or attorney's fees
pursuant to the jury verdict or the TVPA. HPMDPC first posits that
Dr. Bandikatla cannot recover the costs of her defense (despite
the verdict) because the TVPA only permits the recovery of
"reasonable attorneys' fees not costs." Pl. Opp'n, at 16. HPMDPC,
however, waived this argument by failing to raise it as an
objection at the charging conference, and because it is does not
raise a "fundamental" error, the Court will not consider this
belated argument now. Shade v. Housing Auth. of City of New Haven,
251 F.3d 307, 312-13 (2d Cir. 2001). 3/13/23 Pl. Letter; 3/13/23
Tr. 792-809. See also Fed. R. Civ. P. 51(c)(2); Kroshnyi v. U.S.
Pack Courier Servs., Inc., 771 F.3d 93, 106 n.23 (2d Cir. 2014).
HPMDPC's next argument, that the Court cannot award Dr. Bandikatla
attorneys' fees because "the jury did not award her attorneys'
fees," Pl. Opp'n, at 17, fairs no better because the jury did, in
fact, award attorney's fees to Dr. Bandikatla. See Verdict
(awarding Dr. Bandikatla the "costs of defense"); Instrs. of Law
to the Jury, at 16 (defining "the costs of defending the suit" to
"includ[e] attorneys' fees"). Once the jury awarded attorneys'
fees, it then became the duty of the Court to calculate those fees.
See McGuire, 1 F.3d at 1313.

**b. <u>Calculation of Attorneys' Fees</u>**

The Court now turns to calculating the amount of attorneys' fees. Here, Dr. Bandikatla entered into an alternate fee arrangement with Anderson & Shah, which capped the fees she paid out of pocket at $125,000. <u>See</u> Bandikatla Reply Aff., Ex. B. Accordingly, whether or not Dr. Bandikatla will be entitled to recover more than the fees she has already pay out-of-pocket will turn on the fee-shifting provision of the TVPA. Accordingly, the Court conducts the entirety of its analysis under the fee-shifting provision of the TVPA. The Court will thus start by calculating the "lodestar amount, [which] is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Healey v. Leavitt</u>, 485 F.3d 63, 71 (2d Cir. 2007).

### i. <u>Reasonable Hourly Rates</u>

The first step is determining the reasonable hourly rate. For the work done at Scarinci & Hollenbeck, Dr. Bandikatla seeks the following rates: $475/hour for partners; $425/hour for counsel; $375/hour for senior associates; and $320/hour for more junior associates. <u>See</u> First Shah Decl., ¶¶ 10-11, ECF No. 213. Additionally, the following rates are sought for the work of the attorneys at Anderson & Shah: $450/hour for Mr. Shah; $350/hour for counsel; $250/hour for associates; $275/hour for senior associates; and $100/hour for paralegals and law clerks. <u>See</u> <u>id.</u> ¶¶ 78, 100-01. For the reasons explained below, the Court finds

that the rates requested by Anderson & Shah are reasonable but the rates requested by Scarinci & Hollenbeck are unreasonable.

"[T]he reasonable hourly rate is the rate a paying client would be willing to pay." Lilly v. City of New York, 934 F.3d 222, 230 (2d Cir. 2019). The rate must be "in line with . . . prevailing rates in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund, 450 F.3d 91, 96 (2d Cir. 2006). In determining the reasonable hourly rate, the Court will consider the Johnson factors and "take judicial notice of the rates awarded in prior cases." United States ex. rel. Nichols v. Comput. Scis. Corp., 499 F. Supp. 3d 32, 40-41 (S.D.N.Y. 2020).

The rates requested by Anderson & Shah are reasonable. The requested rates are in line with the hourly rates that courts have awarded to paralegals, law clerks, and attorneys of similar experience in comparable cases. See, e.g., Paguirigan v. Prompt Nursing Emp. Agency LLC, 1:17-cv-01302, 2022 WL 6564755, at *7-*8 (E.D.N.Y. Apr. 7, 2022) (approving rates of $550/hour for a lawyer with thirty years of experience and $450/hour for a counsel); Angulo v. 36th St. Hosp. LLC, 19 Civ. 5075, 2020 WL 4938188, at *17 (S.D.N.Y. July 31, 2020) (explaining that many courts in the Southern District have found $250/hour to $275/hour is a reasonable hourly rate "[f]or an associate with two to four years'

experience"); 1979 Family Tr. Licensor, LLC v. Darji, 19-CV-4389, 2020 WL 9596279, at *1 (S.D.N.Y. Sept. 30, 2020) ("Courts in this district typically approve paralegal hourly rates between $150 to $200."); Torres v. City of New York, 18-CV-03644, 2020 WL 6561599, at *5 (S.D.N.Y. June 3, 2020) (finding $100/hour for law clerks to be reasonable). The requested rates are also justified by Anderson & Shah's customary rates, the experience of the attorneys, and the years-long length of this litigation. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (recounting the Johnson factors); First Shah Decl., ¶ 23; Second Shah Decl., Ex. B, ECF No. 219-2.

HPMDPC, however, argues that Anderson & Shah's fee should be capped at the amount Dr. Bandikatla was willing to pay under her flat-fee arrangement with them (which was a maximum of $125,000, including the fees she already paid to Scarinci & Hollenbeck). See Bandikatla Reply Aff., Ex. B. The Court disagrees. "[C]ourts have regularly held that a plaintiff who agreed to pay a discounted rate in a retainer agreement is not precluded from seeking the attorney's customary rate on a motion for fees." M.K. ex. rel. C.K. v. Arlington Cent. Sch. Dist., No. 16 Civ. 05751, 2019 WL 92004, at *3 (S.D.N.Y. Jan. 3, 2019). This is in line with the established principle that although "an actual billing arrangement is a significant factor in determining what fee is reasonable, .

. . it is not necessarily controlling." Kyros Law P.C. v. World Wrestling Ent., Inc., 78 F.4th 532, 549 (2d Cir. 2023). Accordingly, the attorneys' fees that Dr. Bandikatla can recover under the TVPA are not capped by her flat-fee arrangement. The Court finds that it would be reasonable to award Anderson & Shah its requested rates because the rates are in line with the non-discounted rates that Anderson & Shah charges its clients as of 2023 and Anderson & Shah should not be penalized for entering an alternate fee arrangement with Dr. Bandikatla to ensure she remained solvent, while she defended against a baseless and abusive lawsuit that the jury found to be violative of the TVPA. See First Shah Decl., ¶ 23; Second Shah Decl., Ex. B.

However, the higher rates charged by Scarinci & Hollenbeck have not been adequately substantiated. The Court was provided with no explanation as to why Scarinci & Hollenbeck should recover higher rates than Anderson & Shah for work that was done on the same case. Although it is true that the fact Dr. Bandikatla paid these rates "is compelling evidence of a reasonable market rate," the Court still has a "responsibility to discipline the market." Danaher Corp. v. Travelers Indem. Co., No. 10 Civ. 0121, 2014 WL 4898754, at *2 (S.D.N.Y. Sept. 30, 2014). In the absence of adequate substantiation for why the Court should award higher rates to Scarinci & Hollenbeck than Anderson & Shah, the Court will use

the hourly rates charged by Anderson & Shah for the work done by Scarinci & Hollenbeck.

###    ii.  **Reasonable Hours Expended**

Before turning to the reasonableness of the 1,175.1 hours billed in this case, the Court addresses whether Dr. Bandikatla can recover for the work done on her other counterclaims under the TVPA. HPMDPC argues that Dr. Bandikatla should not recover fees for the work done on the counterclaims and theories of TVPA liability that were dismissed at summary judgment. See Pl. Opp'n, at 8-9. The Court adds to this one additional wrinkle. Although Dr. Bandikatla was successful on her breach of contract counterclaim, the TVPA only authorizes recovery of reasonable attorneys' fees for prevailing on a TVPA claim, not any other type of claim. See 18 U.S.C. § 1595(a). Thus, if she cannot recover the fees for the work on the breach of contract counterclaim under the TVPA, she would be limited to only recovering her out-of-pocket costs for that work under the Employment Agreement.

Accordingly, the question confronting the Court is: Can Dr. Bandikatla recover anything for the work on her unsuccessful counterclaims and more than her out-of-pocket costs for the work on the breach of contract counterclaim under the TVPA? To resolve this question, the Court turns to the jurisprudence that has

developed on this issue under 42 U.S.C. § 1988.[14] Under that statute, "where . . . the [prevailing party's] claims involve a common core of facts or are based on related legal theories, and therefore not severable, attorney's fees may be awarded for unsuccessful claims as well as successful ones." Green v. Torres, 361 F.3d 96, 98 (2d Cir. 2004). This logic applies to both unsuccessful claims and successful claims for which fee-shifting would not otherwise be available under the statute. Cf. Moses Enters., LLC v. Lexington Ins. Co., 66 F.4th 523, 528-29 (4th Cir. 2023).

Here, the unsuccessful counterclaims and successful counterclaim are completely intertwined with the TVPA claim. The theory of the prevailing TVPA claim was that HPMDPC abused the legal process through its actions in this lawsuit. The evidence that was relevant to the TVPA claim included how Dr. Bandikatla came to be employed at HPMDPC, how Dr. Bandikatla was treated during her time at HPMDPC, the immigration laws that governed her visa, and the underlying merits of HPMDPC's breach of contract claim. The unsuccessful counterclaims and the successful breach of contract counterclaims arose from this common core of facts. The

---

[14] The Supreme Court has noted that "[t]he standards set forth in" Hensley v. Eckerhart (which addresses this issue) "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party,'" Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983), such as the TVPA.

breach of contract counterclaim and the counterclaims for violations of state and local human rights laws arose from how Dr. Bandikatla was treated during her tenure at HPMDPC, and the tortious interference counterclaim centered on HPMDPC's decision to sue CMFA. See Counterclaim, ¶¶ 92-111. Additionally, the strains of the TVPA claim that were dismissed at the summary judgment stage related to Dr. Bandikatla's treatment during her employment and relied on legal theories related to her prevailing TVPA claim. More fundamentally, however, in this case, where the lawsuit itself violated the TVPA, any actions taken to defend against the baseless lawsuit in some sense relate to and are intertwined with the TVPA claim.

Furthermore, based on the Court's extensive review of the billing records in this case, the work done on breach of contract counterclaim and the unsuccessful counterclaims is inextricably entangled with the work done on the TVPA counterclaim. As a practical matter, there would be no way to parse out which time was billed only to the TVPA claim as opposed to the other claims. See Hensley, 461 U.S. at 435 ("Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims."). In sum, the Court concludes that Dr. Bandikatla may seek attorneys' fees under the TVPA for all the work done in this case.

1.   **Scarinci & Hollenbeck**

The Court now turns to assessing the reasonableness of the hours billed in this case. Between October 2018 and December 2019, Scarinci & Hollenbeck billed 90.3 hours. HPMDPC has raised two objections to these billed hours, both of which are meritless. HPMDPC first argues that the time that Scarinci & Hollenbeck spent to remove the case to federal court was unnecessary because it was properly in state court pursuant to a forum selection clause in the Employment Agreement. Pl. Opp'n, at 23. This is nothing more than a thinly veiled attempt to relitigate its motion to remand that was denied. See 12/20/18 Order, ECF No. 21. Dr. Bandikatla had a right to invoke this Court's jurisdiction; thus, her attorneys' work to remove the case is compensable.

Next, HPMDPC argues that "Scarinci & Hollenbeck never performed any work on [Dr.] Bandikatla's breach of contract or her TVPA counterclaims on which she was successful." Pl. Opp'n, at 24. That, however, will not preclude Dr. Bandikatla from recovering these attorneys' fees.[15] Scarinci & Hollenbeck's work was all geared toward defending against HPMDPC's lawsuit, which violated the TVPA. It would thus be perverse to decline to award these

---

[15] Dr. Bandikatla argues that Scarinci & Hollenbeck "researched and filed [the TVPA and breach of contract claims] counterclaims." Def. Reply Br. in Supp. of Fee Pet. ("Def. Reply Br."), at 9, ECF No. 220. The submitted invoices do not bear that out. There are no billing entries that reflect work done to research or draft the counterclaims. See First Shah Decl., Ex. 3, ECF No. 213-3.

attorneys' fees, especially when the jury found Dr. Bandikatla was entitled to the costs of her defense and she paid all of Scarinci & Hollenbeck's fees out of pocket. See First Shah Decl., Ex. 4, ¶¶ 3-5, ECF No. 213-4. This work is thus compensable under the TVPA.

Although HPMDPC's objections are off the mark, the Court has identified two minor issues with the submitted invoices. First, Scarinci & Hollenbeck billed 6.8 hours of travel time at its standard rate; however, "[t]he custom in this Circuit is to reduce billing rates for travel by 50%." John Wiley & Sons, Inc. v. Book Dog Books, LLC, 327 F. Supp. 3d 606, 646 (S.D.N.Y. 2018). Accordingly, only $1,190 may be recovered for this time. Second, the last invoice (number 226054) reflects work done by "KGG." See First Shah Decl., Ex. 3, at 17. But Dr. Bandikatla provided no information about this attorney and accordingly has not substantiated why this work is compensable. The Court will therefore exclude the 0.5 hours that "KGG" billed. After these deductions, the amount that will be awarded for the work done by Scarinci & Hollenbeck is $32,035.

### 2.   Anderson & Shah: Phase I[16]

In January 2020, the case was transferred to Anderson & Shah. See First Shah Decl., ¶¶ 18-19. Between January 2020 and December

---

[16] HPMDPC asserts, in a conclusory fashion, that Anderson & Shah should not be permitted to recover for the time billed by

2020, Anderson & Shah billed 505.2 to complete discovery and summary judgment briefing. See id. ¶¶ 32-49; First Shah Decl., Ex. 5, ECF No. 213-5; First Shah Decl., Ex. 7, ECF No. 213-7. HPMDPC raises numerous line-item objections to the time billed during this period, only some of which have merit.

The Court agrees with three of HPMDPC's line-item objections. First, HPMDPC objects to the 0.5 hours that were billed to reviewing documents related to Dr. Egbert's case. Pl. Opp'n, at 21-22. Because Dr. Bandikatla has not indicated how the review of these documents was related to her case, Dr. Bandikatla is not entitled to attorneys' fees of $165 for these 0.5 hours. Second, HPMDPC objects that the time Anderson & Shah billed to expert discovery should be excluded as unnecessary because "[e]xpert disclosure was never produced" in this case. Pl Opp'n, at 22. The Court agrees this time should be excluded as unnecessary because expert discovery never occurred in this case and thus will not

---

paralegals. See Harris Decl., ¶ 38, ECF No. 218. Because HPMDPC has not identified a legal basis for this objection or objected to specific time entries, the Court understands HPMDPC to be arguing that time billed by paralegals is never recoverable. That is wrong. See Indep. Project, Inc. v. Ventresca Bros. Constr. Co., Inc., 397 F. Supp. 3d 482, 493 n.4 (S.D.N.Y. 2019) ("Paralegal services are includable in an award of attorneys' fees."). HPMDPC also makes two vague objections that do not identify which line-items are problematic. See Harris Decl., ¶¶ 20, 28. The Court will thus not consider these objections, as it is HPMDPC's burden "to identify" specifically the "alleged deficiencies in plaintiff's billing records." Kerr v. John Thomas Fin., 14 Civ. 9168, 2017 WL 435826, at *8 n.6 (S.D.N.Y. Jan. 31, 2017).

award the $365 in fees incurred. Third, HPMDPC argues that the time billed to researching the Coverdell Act should be excluded as unrelated to the case. Pl. Opp'n, at 22. Dr. Bandikatla conceded this time "should be excluded." Def. Reply Br., at 7. Therefore, the Court will not provide compensation for the 3.1 hours spent on this task, which amounts to $1,395 in fees.

The Court disagrees with the rest of HPMDPC's line-item objections. First, HPMDPC objects that Anderson & Shah spent "33.30 hours" on internal meetings, which "were unproductive, unnecessary, or otherwise unreasonable." Pl. Opp'n, at 20 (referencing Ex. 5). This objection is without basis, except for the 0.5 hours that Dr. Bandikatla conceded are not recoverable. Second Shah Decl., ¶ 8 n.1, ECF No. 219. HPMDPC has failed to identify the specific time entries that it believes are not compensable, and the Court was unable to locate the alleged 33.30 hours' worth of internal meetings in the time records to which HPMDPC referred in its brief. See First Shah Decl., Ex. 5. Accordingly, the Court will reduce the fee amount for internal meetings by only $125.

Second, HPMDPC protests that Dr. Bandikatla "should not be awarded attorneys' fees . . . for work performed . . . with respect to the DOL complaint, which was not the subject of the instant litigation." Pl. Opp'n, at 22. The Court disagrees. After extensive review of the billing records, the Court finds that the time

entries reflect a review of what occurred in the DOL litigation because it was relevant to the recovery Dr. Bandikatla was seeking on her breach of contract counterclaim.

Third, HPMPDC asserts that Dr. Bandikatla should not recover fees that were labeled as a "write-off" in the invoices. Harris Decl., ¶ 26; First Shah Decl., Ex. 5. But, HPMDPC has not provided a basis for this assertion and appears to misunderstand that the notation, "write-off," is an internal demarcation that indicates Dr. Bandikatla hit her fee cap. See Second Shah Decl., ¶ 5. The Court will accordingly not exclude the fees labeled "write-off."

Finally, the HPMDPC makes one main objection to the time billed during this phase: that Dr. Bandikatla "should not be awarded any fees relating to summary judgment motions" because she "did not prevail on her cross-motion for summary judgment." Harris Decl., ¶ 26. The Court disagrees. HPMDPC has pointed to no binding authority for the proposition that a Court should disallow all fees when a motion for summary judgment was unsuccessful. Additionally, the Court will make any adjustments for Dr. Bandikatla's partial success, if necessary, once the lodestar amount is calculated. Although the Court disagrees with HPMDPC's argument, it does have concerns about the amount of time Anderson & Shah billed on summary judgment. The Court's detailed review of the billing invoices revealed that Anderson & Shah billed a whopping 288.1 hours (for a total of $98,300 in fees) to preparing

and briefing summary judgment. See First Shah Decl., Ex. 5. This is excessive given the nature of the claims at issue in this case. The Court will thus impose a 50% cut on the fees incurred in litigating summary judgment and award only $49,150 in fees for this work.

After making the appropriate reductions, Dr. Bandikatla is entitled to recover $122,835 in fees for the work done during Phase 1 of the litigation.

### 3.   Anderson & Shah: Phase 2

Between September 2021 and March 2023, Anderson & Shah billed 482.9 hours to prepare for and complete trial. See First Shah Decl., Ex. 6, ECF No. 213-6. HPMDPC only raises one line-item objection. It argues that the amount of time billed to internal mock trials is excessive.[17] The Court agrees. Although time spent on mock trials is generally compensable, here the amount of time that was billed is excessive. See Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 540 (S.D.N.Y. 2008). Seven different attorneys billed a total of 27.8 hours for attending the same internal mock trials, and many of these attorneys had an extremely limited role in preparing for the trial (namely, Jerry Santer, Joseph Lanzot,

---

[17] To the extent that HPMDPC is also objecting to billing entries during Phase 2 that reference the DOL litigation (a total of 0.5 hours), the Court will not exclude that billed time for the same reasons it did not exclude the time billed with respect to the DOL litigation in Phase 1.

Nicholas Carlson, John Regina, and Jacqueline Palazzo). First Shah
Decl., Ex. 6. The Court will accordingly only award a fee for the
time that Mr. Shah and Ms. Donegan spent at the mock trials, as
they were the attorneys that were actually involved in this
litigation. Dr. Bandikatla is thus only entitled to an award of
$3,372.50 for the time billed to internal mock trials.

Although not raised by HPMDPC, the Court has an additional
concern with the time billed during this period. Anderson & Shah
billed 108.1 hours to trial preparation before this case was
transferred to the undersigned for trial. See First Shah Decl.,
Ex. 6. Much of this time was spent preparing and filing motions in
limine, jury instructions, and voir dire questions; conferring
with the client about trial; and drafting a joint pretrial order,
based on Judge Schofield's rules. However, when this case was
transferred to the undersigned, all but the motions in limine had
to be refiled and conformed to the undersigned's requirements. The
Court's extensive and detailed review of the invoices reveals that
this resulted in a duplication of efforts on all but the motions
in limine. In the Court's view it would be unfair for HPMDPC to
pay for that duplication; however, it would also be unfair to
Anderson & Shah to disallow the entirety of the $26,970 in fees
(or 68.9 hours) that were billed for these tasks because it likely
lessened the amount of work that needed to be done once the case
was transferred. Accordingly, the Court finds that the just

solution is to reduce the amount awarded for this time by 50%, and accordingly grants $13,485 in fees for this work. See Marion S. Mishkin L. Off. v. Lopalo, 767 F.3d 144, 150 (2d Cir. 2014) (district courts have discretion to "use a percentage deduction as a practical means of trimming fat"). After making the relevant deductions, the Court awards $158,557.50 in fees for the work during this period.

### 4.   **Anderson & Shah: Phase 3**

Finally, Anderson & Shah billed a total of 97.3 hours to work on the attorneys' fee application and opposing HPMDPC's motion for judgment notwithstanding the verdict. Specifically, Anderson & Shah billed 56.8 hours to the fee application, and 40.5 hours to drafting an opposition to HPMDPC's judgment as a matter of law. The Court finds that Anderson & Shah billed an excessive amount on both tasks.

The Court starts with the 56.8 hours that Anderson & Shah billed on the fee application. In general, Dr. Bandikatla can recover attorneys' fees under the TVPA.[18] However, "[a] request for

---

[18] HPMDPC's objection that attorneys' fees are unrecoverable appears to confuse the basis for the recovery here. The recovery is not based on the fee-shifting provision of the Employment Agreement, under which fees on a fee application cannot be recovered. F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1266 (2d Cir. 1987). Instead, this is based on the fee-shifting provision of the TVPA. The Court sees no reason why the rule under 42 U.S.C. § 1988 that fees on fee applications can be recovered should not also apply under the TVPA. See Weyant v. Okst, 198 F.3d 311, 316 (2d Cir. 1999).

attorney's fees should not result in a second major litigation."
Hensley, 461 U.S. at 437. Here, Anderson & Shah did just that by
billing 56.8 hours on what should have been a simple fee dispute.
The Court will accordingly cut the attorneys' fees incurred on the
fee application by 80% and award $4,195 in fees.

Next, Anderson & Shah billed 40.5 hours on an opposition brief
to HPMDPC's motion for judgment as a matter of law. Again, the
Court finds that this is an excessive amount of time to bill for
one opposition brief because the issue was already essentially
litigated in full at the Rule 50(a) stage and the Court already
laid out the reasons at that time about why HPMDPC's sufficiency
of the evidence arguments should fail. The Court will accordingly
reduce the attorneys' fees incurred to prepare the opposition brief
by 50% and award $7,003.75 in fees.

In sum, the Court awards $11,198.75 for the work done during
Phase 3 of the litigation.

### 5.   **Conclusion**

After the adjustments indicated above, the final lodestar
amount is $324,626.25.[19] "While there is a strong presumption that
the lodestar figure represents a reasonable fee, . . . the degree

---

[19] The Court also notes that the attorneys' fees awarded need not
be proportionate to the amount of damages that the jury awarded.
See Millea v. Metro-North R.R. Co., 658 F.3d 154, 169 (2d Cir.
2011) ("The whole purpose of fee-shifting statutes is to generate
attorneys' fees that are *disproportionate* to the plaintiff's
recovery." (emphasis in original)).

of success obtained by the [prevailing party] is the most important factor in determining the appropriate fee award." Green, 361 F.3d at 99. Accordingly, just because the Court can award "full fees . . . to a partially prevailing plaintiff when the underlying claims are intertwined," does not mean that the Court must, as "the court retains substantial discretion to take into account the specific procedural history and facts of each case." Id. See also Hensley, 461 U.S. at 436 ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."). Here, the Court finds awarding the lodestar amount would be excessive based on the Court's evaluation of Dr. Bandikatla's overall success in this litigation. Although she obtained a substantial victory by prevailing on her TVPA claim, she did not recover all the damages she initially sought on her breach of contract counterclaim and three of her counterclaims were summarily dismissed on summary judgment. See 9/17/21 Op. and Order, at 7, 10-14. The Court thus finds that a 20% reduction of the lodestar amount is required to account for Dr. Bandikatla's partial success. See Hensley, 461 U.S. at 436-37 (indicating a court can "reduce the award to account for the limited success"); Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n, 934 F.3d 238, 245 (2d Cir. 2019); Kassim v. City of

<u>Schenectady</u>, 415 F.3d 246, 256 (2d Cir. 2005). Accordingly, the Court will award $259,701 in attorneys' fees to Dr. Bandikatla.

### c. **Calculation of Costs**

Finally, the Court must determine the costs it should award to Dr. Bandikatla. "Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 763 (2d Cir. 1998).[20] Here, Dr. Bandikatla is seeking $10,206.38 in non-taxable costs. Third Shah Decl., Ex. 28, ECF No. 226-3.[21] These costs include travel, meal, and hotel expenses, as well as delivery, subpoena, service, transcript, and photocopying fees. <u>Id.</u> All of these costs are generally awardable. <u>See</u> <u>Sulkowska v. City of New York</u>, 170 F. Supp. 2d 359, 370 (S.D.N.Y. 2001); <u>Duke v. County of Nassau</u>, No. 97-CV-1495, 2003 WL 23315463, at *6 (E.D.N.Y. Apr. 14, 2003); <u>Motorola, Inc. v.</u>

---

[20] As the Court has already explained, HPMDPC has waived any argument that Dr. Bandikatla is not entitled to recover the costs of her defense under the TVPA. And regardless, the Employment Agreement's fee-shifting provision also permits Dr. Bandikatla to recover the costs she incurred in enforcing the Agreement, which would also cover all these expenses because she is responsible for paying all of these costs out-of-pocket. <u>See</u> First Shah Decl., Ex. 4, ¶¶ 4, 9; <u>Bhungalia Fam., LLC v. Agarwal</u>, 317 F. Supp. 3d 727, 738, 745 (S.D.N.Y. 2018).

[21] Dr. Bandikatla has indicated that she is only seeking non-taxable costs. <u>See</u> First Shah Decl., ¶ 124. Dr. Bandikatla has provided no reason why the $6,013.36 she labeled as taxable costs should instead be treated as non-taxable costs. <u>See</u> Def. Br. in Supp. of Fee Pet., at 16, ECF No. 212. These costs will accordingly not be awarded.

Abeckaser, No. 07-cv-3963, 2009 WL 2568529, at *7 (E.D.N.Y. Aug. 5, 2009); Elsevier Inc. v. Grossmann, 12 Civ. 5121, 2019 WL 3852484, at *7 (S.D.N.Y. Aug. 16, 2019); Norwood v. Salvatore, 3:12-cv-1025, 2016 WL 1060299, at *9 (N.D.N.Y. Mar. 15, 2016). The only specific objection that HPMDPC has raised is with respect to the lodging costs, arguing that Dr. Bandikatla is seeking "to recover . . . for lodging after the conclusion of the trial in this matter." Harris Decl., ¶ 41. That is wrong. The March 16th date printed on one of the invoices is likely the result of a computer-generated error, as it plainly shows that Ms. Donegan was staying five nights at the hotel, which would align with the first week of trial. See First Shah Decl., Ex. 4. Additionally, the invoices from the Hampton Inn show that Mr. Shah and Ms. Donegan stayed there for the last two days of trial and then checked out the morning after trial ended. Id. There is nothing improper here. Accordingly, the Court finds that "[t]he out-of-pocket expenses at issue here were incidental and necessary to the representation of" Dr. Bandikatla and are thus recoverable. U.S. Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989). The Court awards $10,206.38 in costs.

**V.   Conclusion**

For the reasons discussed above, HPMDPC's motion for judgment notwithstanding the verdict is denied, and Dr. Bandikatla's motion for attorneys' fees and costs is granted in the amount of $259,701

in fees and $10,206.38 in costs. Plaintiff is directed to pay those amounts to Dr. Bandikatla by no later than April 15, 2024. The Clerk of Court is directed to enter final judgment.

    SO ORDERED.

New York, NY
April 5, 2024

                                      JED S. RAKOFF, U.S.D.J.